JAMES H. CROSS v. RUFUS C. FLOOD, and DAYTON MOORE.

October Term, 1904.

Present:   ROWELL, C. J., MUNSON, START, WATSON, HASELTON, and
POWERS, JJ.

Opinion filed February 20, 1905.

*Libel—Innuendoes—Sufficiency of Declaration.*

A libel may apply to a particular person, though such person is not
named therein.

A declaration for libel, alleging the publication of a letter, wherein the
writer stated that his wife had left him and taken his child with
her; that he had not seen her since, but that she had been "fre-
quently seen in the company of one Cross, a ticket agent at Rut-
land." "Couple this fact with the circumstance that my little girl
was found in the home of the mother of this man Cross, * * * *
and then read between the lines for a moment, and it is not hard
for a person of ordinary intelligence to figure out the facts in the
case,"—with proper innuendoes, is sufficient on demurrer.

LIBEL.   Heard on general demurrer to the declaration, at
the March Term, 1904, Rutland County, *Tyler,* J., presiding.
Demurrer overruled, and declaration adjudged sufficient. The
defendant excepted.   The opinion states the substance of the
declaration.

*Butler & Moloney* for the defendants.

The language of the publication is not actionable *per se.*
*Colby* v. *Reynolds,* 6 Vt. 489; *Jones* v. *Roberts,* 73 Vt. 204;
*St. J. Academy* v. *Gaiser,* 46 Am. St. Rep. 502.

If the language is not actionable *per se,* and the action-
able quality arises from extrinsic facts and circumstances, there
must be a prefatory averment of the facts, and the publication
must be connected with these facts by an allegation. *York* v.

*Johnson,* 131 Mass. 482-5-6; *Darling* v. *Clement,* 69 Vt. 292-296; *Sheridan* v. *Sheridan,* 58 Vt. 504; *Merritt* v. *Dearth,* 48 Vt. 65; *Hoar* v. *Ward,* 47 Vt. 657; *Wing* v. *Wing,* 66 Me. 62; *Adams* v. *Stone,* 31 Mass. 433; *Thompson* v. *Lewiston Pub. Co.,* 39 Atl. Rep. 556.

*Marvelle C. Webber* for the plaintiff.

The words of the publication are susceptible of the meaning ascribed by the declaration, and it is for the jury to say whether the words were uttered in the sense alleged. *Jones* v. *Roberts,* 73 Vt. 201; *Darling* v. *Clement,* 69 Vt. 292; *Wilcox* v. *Moon,* 63 Vt. 481; *Sheridan* v. *Sheridan,* 58 Vt. 502; *Royce* v. *Maloney,* 58 Vt. 437; *Gregory* v. *Atkins,* 42 Vt. 237; *Nott* v. *Stoddard,* 38 Vt. 25; *Dickey* v. *Andros,* 32 Vt. 55; *Nichols* v. *Packard,* 16 Vt. 83.

HASELTON, J.  This is an action for libel, and was heard in county court on demurrer to an amended declaration. The demurrer was overruled and the declaration adjudged sufficient. The defendants excepted, and the cause was thereupon passed to this Court before final judgment under the provisions of V. S. 1629.

Among the preliminary averments, the declaration sets out, with all requisite dates, that the plaintiff Cross was a ticket agent at Rutland in this State, that one Wilbert L. Lambson, was a married man and the husband of Fannie Louise Lambson, and that he had resided in Westfield in the State of Massachusetts, and that the defendants were the owners and publishers, and that one of them was the editor of the Brandon Union, a newspaper published at Brandon in Rutland County, and of general and extensive circulation throughout portions of Vermont, and throughout portions of Massachusetts and New York.

The declaration then charges, with the usual allegations as to motive, the publication and circulation by the defendants, in and through their said newspaper, of a false defamatory and libelous letter of and concerning the plaintiff, signed by the said Lambson. What is deemed the most significant portion of the publication charged is here quoted:

"Sometime over a year ago, I was working in the town of Southwick, Mass., seven miles from my home in West-field. It was my custom to go by train to Southwick to do my work and return home several times during the week. On the 13th day of September, 1901, I left my home in the morn-ing as usual and as I was about to go, my wife asked me for some money. I gave her a five-dollar bill and kissed her and my child good-bye, and went, as was my custom, to the train and my work. I did not return until Thursday, and when I arrived at my home, I found that my wife had gone and taken my child and some of the household furniture. I have not seen her since and did not see the child since until I recently found her. Upon investigation I learned that my wife was in Rut-land, Vt., and that she was frequently seen in the company of one Cross, a ticket agent at Rutland, who by the way, kept company with my wife before I married her. Couple this fact with the circumstance that my little girl was found in the home of the mother of this man Cross at Brandon, and then read between the lines for a moment; and it is not hard for a person of ordinary intelligence to figure out the facts in the case."

The pleader, by innuendoes, explains that the publication imputes to the plaintiff the crime of adultery with the wife of said Lambson. We do not consider it necessary to analyze and dissect this publication line by line and sentence by sentence. The method of the writer is artful, oblique, and covert. But the matter of the publication is reasonably sus-

ceptible of the meaning attributed to it by the innuendoes. The portions of the publication set out in the declaration but not here quoted, do not, to say the least, affect favorably the character of what is above recited. It is urged that there may have been more than one ticket agent at Rutland by the name of Cross. This is possible, just as it is possible that there may be in the same city two or more persons of the same full name. But here the preliminary averments, the publication charged and the warrantable innuendoes are such that the declaration is good. A libel may be applied to a particular person although such person is not named therein, or although an initial alone is used, or although to determine the person intended it is necessary to "read between the lines," to borrow an expression from the publication in question. To hold otherwise would be to inaugurate a state of society in which calumny would be without adequate and salutary legal restraint.

The declaration, in its entirety, is such that the defendants, if they would meet it, must do so otherwise than by a demurrer.

*The judgment of the County Court is affirmed and the cause is remanded.*