ROBERT T. GORDON *v.* JOURNAL PUBLISHING COMPANY.

January Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed May 16, 1908.

*Libel—Pleading—Allegation of Defamatory Matter—Sufficiency —Allegation of Time—Certainty—"Or About"—Duplicity —Libelous Charge of Statutory Crime—"Assault and Battery with Intent to Kill"—Office of Innuendo—Construction of Actionable Words.*

Where libelous matter consists of distinct publications in different issues of a newspaper, each publication may be declared upon in a separate count.

While the allegation of the time that a material fact alleged in the pleadings occurred is seldom material, yet pleadings in personal actions must allege every traversable fact to have taken place on

some particular day, and this requirement is not relaxed by the
rule that a variance between the time alleged and that proved is
not fatal.

The words "or about," used in a declaration in connection with an
allegation of the time that a material fact took place, renders the
allegation so indefinite and uncertain as to be bad on demurrer.

A publication may contain an actionable libel against a person without
naming him, and a good declaration can be framed for such a libel,
but the pleading must show on its face that the alleged defama-
tory words were published of plaintiff.

In an action for libel, where the publication relied on did not call
plaintiff by name, an allegation in the declaration that plaintiff
was a student in the public schools of the city of Montpelier, and
that the publication was of and concerning him, was bad on
demurrer, notwithstanding the innuendo, "meaning the plaintiff."

Where libelous matter consists of charging a statutory offence, the
words are actionable, although they do not charge the offence in
the very language of the statute, if the words are such that, con-
strued according to their natural import, they convey the idea
that plaintiff has committed the offence.

A publication charging a person with a statutory offence, designating
it as "assault and battery with intent to kill," is actionable, though
the offence was not charged in the words of the statute as "an
assault with intent to kill."

As an actual battery is not essential to complete the crime of assault
with intent to kill, the word "battery" can be treated as surplusage.

In an action for libel, the declaration held to consist of three counts,
each declaring on a separate publication, and so not bad for
duplicity.

An innuendo in a declaration for libel is only a word of explanation,
whose sole office is to interpret the meaning of the alleged libel-
ous language in the light of the circumstances alleged to explain
it; and, therefore, it cannot enlarge the meaning of words, nor
attribute to them a meaning that they will not bear.

A newspaper article stated that a small boy had been nearly killed by
two boys of about his own age, who had brutally whipped him and
pushed him off the roof of a shed onto a pile of scrap iron about
12 feet below; and that apparently the only thing that saved his
life was the fact that his trousers caught on a nail and broke the
force of the fall. Held, that, construed by the rule that words
are to be taken in the sense that is most obvious and natural accord-

ing to the ideas that they are calculated to convey, the article was not libelous as charging an assault with intent to kill.

If the language of an alleged libel is ambiguous it is for the jury to determine the meaning; but if the language admits of but one meaning it is for the court to say what that is.

CASE for libel. Heard on special demurrer to the declaration at September Term, 1907, Washington County, *Waterman*, J., presiding. Demurrer sustained, and declaration adjudged insufficient. The plaintiff excepted. The opinion states the case.

*T. R. Gordon* and *George W. Wing* for the plaintiff.

The words "on or about" are not fatal, as was expressly held in *Hoyt* v. *Smith*, 32 Vt. 304. See also 2 Swift's Dig. 423; Stephen Pl. 292; 25 Cyc. 468, and note; *Cummins* v. *Butler*, 3 Blackf. (Ind.) 190.

If the words of the alleged libel charge an assault with intent to kill or are capable of that construction, then they charge the plaintiff with a crime known to the law, and the words "and battery" may be rejected as surplusage. 2 Bish. Cr. L. §58; Newell, Slander and Libel, §23.

The same libelous words may be set forth in one count in various forms, so as to meet the proof under the various shapes in which it may come. If a count sets out words not actionable and words spoken at the same time which are actionable, the count is good and the non-actionable words may be in aggravation of damages. *Darling* v. *Clement*, 69 Vt. 299; *Hoyt* v. *Smith*, 32 Vt. 304; 13 Pl. & Pr. 61; *Hughes* v. *Rees*, 4 M. & W. 208; 20 Wend. 190.

Where, as in this case, the words are actionable *per se*, an innuendo is unnecessary, and if present, may be treated as surplusage. Newell, Libel and Slander, 620; *Carter* v. *Andrews*, 33 Mass. 1; *Thomas* v. *Croswell*, 7 Johns 264; *Kraus* v. *Sentinel Co.*, 60 Wis. 425; *Gage* v. *Shelton*, 3 Rich. (S. C.) 242; *Fry* v. *Bennett*, 5 Sanford (N. Y.) 65.

*Harvey, Harvey & Harvey* for the defendant.

It is alleged that the libels were published "of and concerning the plaintiff." By means of innuendoes the pleader

says that the words mean the plaintiff. This is not sufficient. The law on this question goes back to the English cases. *Leuknor* v. *Godman*, 3 Bulst. 249; *Johns* v. *Davers*, Cro. Eliz. 496; *Hall* v. *Blandy*, 1 Younge & Jarvis 479; Chitty's Pl. 522; *King* v. *Horne*, Cow. 682; 2 Saund. Pl. & Pr. 795; *Van Vechten* v. *Hopkins*, 5 Johns. 211; *Miller* v. *Maxwell*, 16 Wend. 9; *De Witt* v. *Wright*, 57 Cal. 576.

The allegations must show not only that the words apply to the plaintiff but also in what sense they are used, and how they are defamatory. Statements that they are used "concerning the plaintiff," are insufficient, if from their character, they do not intelligibly apply to him in a defamatory sense. General allegations and innuendoes are not enough. Newell, Slander, 613; 13 Enc. Pl. & Pr. 40; *Mix* v. *Woodward*, 12 Conn. 282; *Cave* v. *Shelor*, 2 Munf. (Va.) 193; *Harvey* v. *Coffin*, 5 Blackf. (Ind.) 566; *Tyler* v. *Tillotson*, 2 Hill 507; *Stewart* v. *Wilson*, 23 Minn. 449.

If the persons in whose presence and hearing slanderous words are spoken, do not understand their meaning and do not repeat them to others, there is no such publication of the words as will support an action for slander. *Sheffill* v. *Van Deusen*, 13 Gray 304; *Broderick* v. *James*, 3 Daly 481; 18 Enc. Law 994; *Anderson* v. *Hart*, 68 Iowa 400; *McCallum* v. *Lambie*, 145 Mass. 234; *Finnegan* v. *Detroit Free Press Co.*, 78 Mich. 659; *Carlson* v. *Minn. Tribune Co.*, 47 Minn. 337; *Posnett* v. *Marble*, 62 Vt. 481; *Cross* v. *Moore*, 77 Vt. 285.

The province of the innuendo is to explain the meaning of the words so as to connect them with other facts set forth in the declaration. It is not to extend or enlarge the words of the libel. *Sabin* v. *Angell*, 46 Vt. 740; *Sheridan* v. *Sheridan*, 58 Vt. 504; Newell, Slander, 619, 629; Chitty Pl. 16th Am. Ed. 531; *Nichols* v. *Packard*, 16 Vt. 83.

TYLER, J. Case for an alleged libel. The defendant demurs to the declaration and assigns several special causes of demurrer.

For a full understanding of the questions raised it will be useful to recite in full the publication complained of as set out in the declaration before considering the construction given to the different paragraphs by the plaintiff's *innuendoes*.

The first publication alleged to have been made on or about July 11, 1907, is as follows:

*"Warrants issued for two boys."*

"Authorities know who assaulted the Greene boy and, arrests will be made today.   Greene is still confined to bed.  Cases may come up tonight.   Joseph Greene, the small boy who was nearly killed by two boys of about his age on Tuesday afternoon, is still confined to the bed and is in a serious condition as the result of the injuries alleged to have been inflicted by two other boys.   Warrants were issued this morning for the arrest of the two boys implicated in the affair.   The story told by young Greene, who is about 12 years of age, is that he went to the creamery after milk and that the two boys set after him with a horse-whip.   They drove him to the top of a shed and one of them pushed him off the top so that he fell some 12 feet onto a pile of scrap iron, bottles and other rubbish.   Apparently the only thing that saved his life in the fall was the fact that his trousers caught on a nail and broke the force of the blow on the material at the foot of the building.   It was found this morning that Greene was lashed about the legs and body with the whip and severely scratched and bruised in the fall from the top of the shed.   He will be unable to go into court and testify for some time.

The warrants for the two boys were not served until late this afternoon because of the fact that City Judge Harvey was in Graniteville on legal matters and was unable to hold court. It is possible that the case will be brought up this evening."

That on July 12 the defendant published the following:

*"Greene's case is serious."*

"Boys involved in assault have not been arrested and charge against them may be a grave one.   The case of Joseph Greene, who was brutally whipped and finally pushed off the roof of a shed in the rear of Wheelock's real estate agency by hoodlums, so that he sustained unknown and serious injuries, is so serious that he is still unable to appear in court.   In fact, the boy's pres-

16

ent situation is such that probably a much more serious case will be made against the two boys involved in the affair than was at first contemplated.

Young Greene has been spitting blood today and those in charge of him are considerably alarmed by the symptoms of internal injury that this would indicate. Until his case takes a turn for the worse or better, no action will be taken against the boys who are known to have committed the outrage, as they are in charge of responsible parties, and will be produced at the proper time.

Whatever the motive of the two young rascals who are responsible for the Greene boy's condition, the case is gradually becoming more and more serious and it may at any time take a turn when immediate arrest may become necessary. Meanwhile everything is being done for the sufferer and he will appear in court and testify against his assailants as soon as the physicians concerned in the case consider him able to do so.''

And the following July 18: ''Joseph Greene, the small boy, who was nearly killed by two other boys a few days ago, is gaining slowly from his injuries and it is expected that he will be able to go into court and testify against his assailants as soon as Grand Juror Heaton returns from a visit to Brandon.''

1. The defendant contends that the declaration contains only one count and that that is bad for duplicity in that it joins and declares upon three different libelous articles published on different days and concerning different subjects.

It is not necessary to decide whether or not the three publications might have been included in one count, as they all relate to the same occurrence, but it is clear that, as the libelous charge consists of different publications in different numbers of the newspaper, it was competent to set out each publication in a separate count. *Hughes* v. *Rees,* 4 M. & W. 204, is full authority for this holding. Each count, however, was demurrable as will appear.

2. It is laid down in the text-books that the allegation of the time of committing injuries *ex delicto* is seldom material, 1 Chit. Pl. 384; that the precise day on which a material fact alleged in the pleadings took place, is in most cases immaterial except when the date of a record, or other writing, or some other fact, the time of which must be proved by a written document,

is alleged.   But these statements are not intended to relax the rule given in all works on pleading, that in personal actions the pleadings must allege the time, that is, the day, month and year when each traversable fact occurred. Stephen on Pl. 291.   Gould says on page 79 that the time of every traversable fact must be stated, that every such fact must be alleged to have taken place on some particular day.   The requirement of certainty is not relaxed by the rule that a variance between the time alleged and the proof is not fatal.   It is evident that the words "or about" take all certainty from the allegation and virtually leave the first count without any time stated.   It was held in   *Cole* v. *Babcock*, 78 Me. 41, 2 Atl. 545, that the word "about" rendered the allegation of time indefinite and uncertain.   See *Platt* v. *Jones*, 59 Me. 232, and *State* v. *Baker*, 34 Me. 52.   The first count must therefore be held insufficient.

3.   There is no allegation in either count in the declaration that identifies the plaintiff as one of the assailants of the Greene boy.   All that is said in the publication concerning the two boys might be applied equally well to many other boys of similar ages.

It is true that a publication may contain an actionable libel upon a person without calling him by name, and a good declaration can be framed for such a libel, but the pleading must show on its face that the alleged defamatory words were published of the plaintiff.   13 Ency. of Pl. and Pr. 39.   It must appear that the defamatory words referred to the plaintiff.   In *Posnett* v. *Marble,* 62 Vt. 481, 20 Atl. 813, 11 L. R. A. 162, 22 Am. St. Rep. 126, it was held that the defamatory words had no apparent connection with the plaintiff, but in *Cross* v. *Moore*, 77 Vt. 285, 59 Atl. 1018, where the plaintiff was not named, it was held sufficient that he was referred to by the extrinsic fact that he was a ticket agent.   But here the statement in the inducement that the plaintiff was a student in the public schools in the city of Montpelier and that the publication was of and concerning him does not apply the words to him, nor does the *innuendo*, "meaning the plaintiff," cure the defect, for the *innuendo* cannot enlarge, extend or change the sense of the previous words.   1 Chit. Pl. 384.

4.   As the declaration is in three counts, each setting out a separate publication, it is relieved of the objection of duplic-

ity; indeed the defendant could not insist upon that ground, it being held that the declaration contains more than one count.

5. The defendant assigns as one cause of demurrer that there is no such crime known to the law as "assault and battery with intent to kill" as the declaration alleges and the libel charges. It is a settled rule, however, that where the offence charged is statutory, the words are actionable although they do not charge the offence in the very language of the statute, if the words are such that, construed according to their plain and natural import, they convey to those who hear, the idea that the plaintiff has committed the offence. 18 Am. & Eng. Ency. 990 and cases there cited. Besides, as an actual battery is not essential to complete the crime of assault with intent to kill, the word "battery" may be treated as surplusage.

6. But the most important question in the case remains to be considered, and that is whether by any fair and reasonable construction of the entire publications an assault with intent to kill is charged as claimed by the plaintiff,—whether the *innuendoes* do not attempt to extend the meaning of the published words beyond their obvious and natural meaning. It is an elementary rule that an *innuendo* is only a word of explanation and never of addition or extension. Its office is to interpret the meaning of the language used in the light of the circumstances alleged to explain them, but it cannot enlarge the meaning of words nor attribute to them a meaning which they will not bear. *Sheridan* v. *Sheridan,* 58 Vt. 504, 5 Atl. 494; *Posnett* v. *Marble,* 62 Vt. 481, 20 Atl. 813, 11 L. R. A. 162, 22 Am. St. Rep. 126.

The rule in the construction of alleged libels is, that if the language is ambiguous and admits of more than one meaning, it is, when necessary to ascertain the meaning, for the jury to say what it means; but if, on the other hand, the language is not ambiguous and does not admit of more than one meaning, it is for the court to say what it means. *Norton* v. *Livingston,* 64 Vt. 473, 24 Atl. 247, and cases cited in the opinion.

Applying the tests that words are to be taken in the sense which is most obvious and natural according to the ideas that they are calculated to convey to those to whom they are addressed,—that the principle of common sense which governs in the construction of words requires that the courts shall understand them as other people would, what is the conclusion?

Plainly the publication states that two rude boys made an unprovoked and brutal assault upon another boy. It charges neither an intent nor an attempt to kill. It indeed says that apparently the boy would have been killed by the fall from the roof except by àn accident that broke the force of the fall, but there is a wide difference between the obvious meaning of this statement and the meaning which the plaintiff attributes to it.

We think the *innuendoes* attempt to extend the sense of the alleged libelous charge beyond their obvious meaning, therefore the trial court properly sustained the demurrer.

The demurrer raises other questions not necessary to be considered.

*Judgment affirmed and cause remanded.*