## BARBER, RESPONDENT, *v.* BRISCOE, APPELLANT.

JUDGMENTS NUNC PRO TUNC — *Amendment.* — A judgment entered at a former term may be amended by the trial court by inserting the plaintiff's true name, and may be entered *nunc pro tunc* as amended. (Cases of *Comanche Mining Co.* v. *Rumley,* 1 Mont. 201; *Territory* v. *Clayton,* 8 Mont. 1; *Keene* v. *Welsh,* 8 Mont. 305, cited.)

SAME — *Interest.* — Under section 1237, fifth division, Compiled Statutes, providing in substance that creditors shall be allowed to collect and receive interest on any judgment from the day of entering up such judgment, a judgment entered *nunc pro tunc* bears interest from the date on which the judgment is to be regarded as entered.

SUPPLEMENTARY PROCEEDINGS — *Appealable orders.* — An order denying a motion to set aside an order for an examination of a judgment debtor upon proceedings supplementary to execution is an appealable order. (Case of *Sperling* v. *Calfee,* 7 Mont. 514, cited.)

SAME — *Validity of proceedings.* — Where no judgment had been entered or valid execution issued at the time of an order for the examination of a defendant on proceedings supplementary to execution, the proceedings are irregular, and cannot be cured by the subsequent entry of a judgment *nunc pro tunc.*

*Appeal from First Judicial District, Lewis and Clarke County.*

Defendant's motion to set aside the order for his examination on proceedings supplementary to execution was denied by HUNT, J., who ordered judgment *nunc pro tunc* for the plaintiff.

*A. A. Lathrop,* and *Walsh & Newman,* for Appellant.

Until judgment was formally entered of record no valid execution could issue, and no supplementary proceedings could be brought to enforce performance. It is only actual final judgments that may be enforced by execution. A mere order for a judgment, although judgment may afterwards be perfected thereon, will not authorize the issuing of execution. (4 Wait's Practice, § 2.) "The party in whose favor judgment is given may at any time within six years after the entry thereof issue a writ of execution for its enforcement . . . ." (§ 312, Code Civ. Proc.; *In re Cook,* 77 Cal. 221.) The effect of a judgment entered *nunc pro tunc,* as of a former date to that of its actual entry, is said to be retroactive to cure defects existing because of the absence of a judgment on the record. The very fact that courts have adopted this practice proves a necessity for it, showing that an existing error requires a cure. As in this case, as appellant urges, there being no judgment of record, no valid execution could be issued ; an execution having been issued, its life spent, and the paper returned to the files, a dead instrument of the law, the *nunc pro tunc* judgment could not put new life into it; that it made a valid judgment upon the verdict rendered December 8, 1887, is not necessary to touch upon in this connection, but it could not make valid past proceedings. Appellant had the right to proceed on his business until respondent had his judgment properly entered of record; he had a constitutional right to refuse to recognize an invalid execution. There had not been "due process of law," and he could not be bound to surrender his property without its full fruition. The court erred in ordering that judgment should bear interest from date of rendition of verdict, December 8, 1887. Section 1237, General Laws, provides that creditors shall be allowed interest "on any judgment rendered before any court authorized to enter up the same from the day of entering up such judgment. . . . ." Common-law judgments did not bear interest. This provision must be strictly construed, and the judgment creditor can only be benefited to the extent given by strict construction of the statute. (*McLaughlin* v. *Doherty,* 54 Cal. 519; *Gray* v. *Palmer,* 28 Cal. 416.) In this case when

was the judgment actually entered on the judgment book? November 21, 1889. No retroactive retrospect *nunc pro tunc* judgment could cause this judgment to be actually entered on the judgment book prior to November 21, 1889.

*McCutcheon & McIntyre*, for Respondent.

Appellant has once before appealed this case to the Supreme Court. (*Barber* v. *Briscoe*, 8 Mont. 214.) To have done so he must have acted upon the assumption that judgment was duly rendered and entered. It therefore does not lie in his mouth to say that this assumption of his was incorrect; he is estopped from asserting the contrary. The maxim *allegans contraria non est audiendus* is directly applicable to his present contention. (1 Herman on Estoppel, §§ 13, 14; *Chaquette* v. *Ortet,* 60 Cal. 600; Bigelow on Estoppel [3d. ed.], pp. 601, 603.) But if this be not so, and final judgment was not had in this action on the verdict of December 8, 1887, until November 21, 1889, then we submit that no appeal lies from the orders complained of by appellant. Such orders are not included in those from which an appeal will lie under the statute. (Comp. Stats. 174, § 421, subd. 2.) The second appeal herein is from the order of November 21, 1889, ordering judgment in this action *nunc pro tunc.* It will be observed that this order is based entirely upon the records of the case, and was for the purpose of correcting an evident misprision of the clerk of the court in not entering judgment as he was ordered to do, and as the statute required him to do. (Comp. Stats. 138, § 302.) That this order was correct we call the attention of the court to the following authorities: *Comanche Mining Co.* v. *Rumley,* 1 Mont. 205; *Territory* v. *Clayton,* 8 Mont. 16; *Keene* v. *Welsh,* 8 Mont. 305; Freeman on Judgments (3d. ed.), §§ 56, 61, 64; *Howell* v. *Morlan,* 78 Ill. 162; *Mays* v. *Hassell,* 4 Stewt. & P. 222; 24 Am. Dec. 750; *Adams* v. *Higgins,* 23 Fla. 13; *Dreyfus* v. *Tompkins,* 67 Cal. 339. Respondent is entitled to statutory interest on this judgment. A judgment entered *nunc pro tunc* must be everywhere received and enforced in the same manner and to the same extent as though entered at the proper time. It makes the judgment of the same effect as if the defects on account of which it was amended had never existed. (Freeman

on Judgments [3d. ed.], § 67; *Adams* v. *Higgins, supra.*) Plaintiff is entitled by statute to interest on his judgment, and the negligence of the proper officer of the court to perform the duty devolved on him by law cannot prejudice his rights. A further effect of the entry of the judgment *nunc pro tunc* is to validate the execution, and necessarily the proceedings based thereon, previously issued in the case, especially where rights of third parties have not intervened, as in the case at bar. (Freeman on Judgments [3d. ed.], § 67; *Adams* v. *Higgins, supra.*)

BLAKE, C. J.—The complaint in this action contained the name of "Sumner J. Barber" as the plaintiff, but the summons described him as "Samuel J. Barber," and notified the defendant of the amount sought to be recovered "upon a certain promissory note made and executed by said defendant on the twenty-fourth day of July, 1885, at Kane Station, Idaho Territory." At the trial, upon the eighth day of December, 1887, the jury returned a verdict for the plaintiff, who is styled "Sumner J. Barber." After the record of the verdict, the following entry appears: "Thereupon it is ordered that judgment be entered accordingly. Defendant, by counsel, excepts to the rendition of judgment, and gives notice of intention to appeal." An *alias* execution was issued May 27, 1889, which recited that Samuel J. Barber recovered a judgment December 8, 1887, against John O. Briscoe, and that "the judgment roll in the action in which such judgment was ordered is filed in the clerk's office, . . . . and the said judgment was docketed in said clerk's office." The return of the sheriff shows that he has been unable to find any property of Briscoe.

Afterwards an affidavit of the attorney of "Samuel J. Barber" was filed in the court below, which stated "that on the eighth day of December, 1887, the plaintiff recovered a judgment in said action in said court against the defendant, John O. Briscoe, . . . . which judgment was duly entered and docketed in the office of the clerk of said court; . . . . that there now remains unpaid on said judgment the whole amount thereof." Upon these and other recitals, the judge of the court below made an order, November 2, 1889, for the examination of said Briscoe,

under the provisions of the Code of Civil Procedure concerning proceedings supplementary to execution.

A motion was filed November 13, 1889, by said Briscoe to set aside the foregoing order. Upon the following day the plaintiff moved the court "to amend the judgment and all subsequent proceedings in said cause by inserting plaintiff's true name, 'Sumner J. Barber' in lieu of 'Samuel J. Barber.'" The court overruled the first and sustained the last motion November 20, 1889.

On the succeeding day, on motion of the plaintiff, this order was made in the court below: "It is ordered that judgment be entered herein as of the eighth day of December, A. D. 1887, on the verdict rendered herein on the said eighth day of December, A. D. 1887, for the sum of two thousand one hundred and forty-seven and sixty one-hundredths dollars ($2,147.60), and costs of suit; and that said judgment bear interest at the rate of ten per cent per annum from the said eighth day of December, A. D. 1887." In pursuance of this order, a formal judgment *nunc pro tunc* was entered on the aforesaid verdict in accordance therewith. Up to this time no other proceedings had been had in the matter excepting those which have been mentioned in this statement of the facts.

The action of the court below in authorizing the amendment by inserting the true name of the plaintiff in the papers, and the entry of the judgment *nunc pro tunc*, is upheld by the decisions of this court, and will not be further discussed. (*Comanche Mining Co.* v. *Rumley,* 1 Mont. 201; *Territory* v. *Clayton,* 8 Mont. 1; *Keene* v. *Welsh,* 8 Mont. 305.)

The contention of the appellant is that the court erred in its order that the judgment should bear interest from the eighth day of December, 1887. The statute provides that "creditors shall be allowed to collect and receive interest . . . . on any judgment rendered before any court or magistrate authorized to enter upon the same, within the Territory, from the day of entering up such judgment until satisfaction of the same be made." (Comp. Stats. div. 5, § 1237.) It is admitted that judgments at common law did not bear interest, and that this statute must be construed strictly. What was the effect of the entry of the judgment *nunc pro tunc* upon the day from which interest can

be collected by the respondent? In *Tapley* v. *Goodsell*, 122 Mass. 183, Chief Justice Gray says: "The technical difficulty of holding the judgment to be binding as of a date before it actually existed is no greater than has always attended every judgment rendered *nunc pro tunc*, and every judgment which took effect by legal relation at an earlier day than that at which it was actually entered. As Lord Mansfield was accustomed to observe, fictions of law can never be contradicted so as to defeat the ends and purposes for which they were invented. . . . . In the case at bar, the judgment, having been legally rendered as of the former term, has the same operation for all purposes necessary to make it effectual, as if it had been then actually entered." Mr. Freeman states the law in the following terms: "The entry of judgments or decrees *nunc pro tunc* is intended to be in furtherance of justice. It will not be ordered so as to affect third persons who have acquired rights without notice of the rendition of any judgment." (*Wells* v. *Gieseke*, 27 Minn. 478; *Auerbach* v. *Gieseke*, 40 Minn. 262.) No question of this kind arises in this case. Mr. Freeman proceeds: "With the exception pointed out in the above section, a judgment entered *nunc pro tunc* must be everywhere received and enforced in the same manner, and to the same extent as though entered at the proper time." (Freeman on Judgments, §§ 66, 67.)

The case of *Fugua* v. *Carriel*, Minor, 170, which was decided in 1823 by the Supreme Court of Alabama, seems to be in point. The facts are not fully reported, and we use this qualified language. It appears that this was an action upon a promissory note; that a default was taken at one term, and that at the next a judgment *nunc pro tunc* was entered, which included interest. A writ of error was prosecuted, and the question under consideration was not presented, but the opinion treats the right to recover the interest as a matter of course, although the mode of computation, according to the tenor of the note, was adjudged erroneous.

The application of these principles requires us to determine that the "day of entering up" the judgment, which is specified in the statute regulating the rates of interest in Montana, is the time which is finally fixed by the courts therefor. When it was ordered that judgment should be entered for the principal sum

upon the eighth day of December, 1887, the statutory interest followed as a legal consequence.

It is insisted that the court erred in denying the motion to set aside the order for the examination of the appellant in the proceedings which have been detailed. The respondent suggests that no appeal can be taken in this matter, if the appellant is correct in his position that no judgment was in force when these proceedings were initiated. We are obliged to review the case as it appears in the record, and the respondent invoked the action of the court, and stated in his affidavit the facts which conferred jurisdiction, and caused the order to be made. He has obtained a ruling in his favor, and cannot complain of its legitimate results, and the order before us is appealable. (*McCullough* v. *Clark*, 41 Cal. 298; *Hagerman* v. *Tong Lee*, 12 Nev. 334. See, also, *Sperling* v. *Calfee*, 7 Mont. 514.)

The chapter of the Code of Civil Procedure relating to "proceedings supplementary to execution" provides that "after issuing an execution against property, and upon proof by affidavit by a party or otherwise, to the satisfaction of the court, or a judge thereof, that any judgment debtor has property which he unjustly refuses to apply towards the satisfaction of the judgment, such court or judge may, by an order, require the judgment debtor to appear at a specified time and place, before such judge or referee appointed by him, to answer concerning the same." (Code Civ. Proc. § 351.) Under this statute, and the circumstances which have been narrated, the above order was made. When the appellant filed his motion, no judgment had been entered in the action, no valid execution had been issued and returned, and Briscoe was not a judgment debtor. Before passing upon this motion, the court, upon the application of the respondent, ordered that the judgment should be entered *nunc pro tunc*. Did this action render the proceedings legal and regular? The general principles of law, which are given by the authorities, do not contain any exceptions, and it it claimed that the judgment which was actually entered cured all the defects which have been pointed out. The court below was convinced by this argument, and acted accordingly.

We think that a different doctrine is applicable and decisive of this question. In *Earl* v. *Skiles*, 93 Ind. 178, the court says:

"To reach the funds of the judgment debtor in the hands of third parties, the affidavit and proof must conform substantially to the requirements of the statute. This proceeding is a remedy extraordinary in character. . . . . Hence the statute, among other things, requires the affidavit to show that the judgment debtor has property which he unjustly refuses to apply towards the satisfaction of the judgment. . . . . In this regard the affidavit and proof are wholly wanting. . . . . For these reasons, we are of the opinion that appellants failed to make a case, either by their affidavit or proof."

In *Wegman* v. *Childs,* 44 Barb. 403, the court says: "In order to sustain this action, the plaintiff is bound to show, not only the judgment, but also an execution from a court having the right to issue it, and that the same was delivered to the sheriff of the proper county, and by him returned unsatisfied. Without each and all of these being proved, the judge had no jurisdiction to entertain proceedings supplementary to execution. . . . ." (See, also, *Flint* v. *Webb,* 25 Minn. 263; *Lynch* v. *Johnson,* 48 N. Y. 33; *Adams* v. *Hackett,* 7 Cal. 201; *Byrd* v. *Badger,* 1 McAll. 443; *Pacific Bank* v. *Robinson,* 57 Cal. 522; 40 Am. Rep. 142; *Sperling* v. *Calfee, supra.*)

The cases show that these proceedings were intended as a substitute for the creditors' bill as formerly used in chancery. The court says, in *Pacific Bank* v. *Robinson, supra:* "After a judgment creditor had exhausted his remedy at law, by the issuance of a *fieri facias,* which was returned *nulla bona,* he had the right to invoke the jurisdiction of a court of equity to aid him, upon the principle of compelling a discovery of assets, tangible or intangible, and applying them to satisfying his execution." The matters in which the informality or irregularity of process is involved cannot be cured by the entry of a judgment *nunc pro tunc,* but the question to be decided is of the gravest importance — the jurisdiction of the court. We have seen that the practice, both in chancery and under the statute, required the existence of certain facts to obtain similar relief. The jurisdiction of the court below to make this order depended upon the circumstances which could then be proved, and could not be controlled by a judgment given subsequently. The motion to set aside the order should have been sustained.

It is therefore adjudged that the cause be remanded, with directions to set aside the order made upon the second day of November, 1889, and that the judgment entered *nunc pro tunc,* upon the eighth day of December, 1887, be affirmed, with costs.

HARWOOD, J., and DE WITT, J., concur.