THE HON. WILLIAM L. HOLLOWAY,  
THE HON. ALBERT J. GALEN,  
THE HON. ALBERT P. STARK, } Associate Justices.  
THE HON. JOHN A. MATTHEWS,

---

ST. ONGE ET AL., RESPONDENTS, *v.* BLAKELY ET AL., APPELLANTS.

(No. 5,820.)

(Submitted March 1, 1926.  Decided March 19, 1926.)

[245 Pac. 532.]

*Water Rights—Acquisition—Abandonment—Adverse Use—Decree — Arbitrary Fixing of Date of Appropriation — When Permissible — Deraignment of Title — Privity — Judgments —Amendment.*

Judgment—When Subject to Correction, When not.
> 1. A judgment expressive of what was actually decided, after once rendered cannot be amended on motion but only on appeal or on motion for new trial; where, however, through a mistake in drafting

---

1.  See 15 R. C. L. 671.

it, it did not grant the relief intended to be granted, the district court may order it amended.

Water Rights—Title to Land—Who may not Raise Question.

2.   Where the vendee of land and a water right ceased to make payments under his contract on the ground that the vendor was without title and the latter took no steps to declare a forfeiture, a stranger to the contract was not in a position in an action concerning the water right thereafter to raise the question of the vendee's title.

Same—Public Lands—Oral Conveyance—Consideration.

3.   One who has settled upon and is in possession of public lands of the United States may convey his right in the same, together with a water right appurtenant thereto, orally and for or without consideration, to one who takes possession thereof.

Same—Abandonment—Forfeiture by Nonuser—What Does not Constitute.

4.   Abandonment of a water right involves the concurrence of the act of relinquishment of possession and the intent not to resume it for a beneficial use, neither alone being sufficient to bring about the abandonment; mere lapse of time, even in excess of the statutory period of limitation, will not work a forfeiture by nonuser and the fact that during the period of nonuser others acquired junior rights does not affect the owner's right to resume its use.

Same—Adverse User—Essential Element.

5.   Use of water does not become adverse until it interferes with the use thereof by a prior appropriator when the latter actually needs the water, and therefore offered proof merely tending to show that the adverse claimant used the water and claimed the right to use it was not proof of adverse use.

Same—Award of Joint Right to Husband and Wife—When Other Claimants may not Complain.

6.   Where husband and wife were jointly awarded a water right in an amount not greater than the husband alone was entitled to receive, the fact that the wife was not entitled to any water in her own right, *held* of no concern and nonprejudicial to appealing claimants, since if anyone was injured it was the husband and he alone could complain of the decree.

Same—Right Possessory—Title to Land not Essential.

7.   The right to use water is a possessory right which may be owned without regard to the title to the land upon which the water is used; it can be acquired by a squatter on public lands or by one holding lands under contract for its purchase and, when acquired, its owner cannot be deprived thereof by a subsequent conveyance of the land by the land owner.

Appeal and Error—Nonprejudicial Error Insufficient for Reversal of Judgment.

8.   Error which did not prejudice appellant does not warrant a reversal of the judgment.

---

3.   See 22 R. C. L. 323.

4.   Abandonment of water rights, see note in 30 L. R. A. 265.   See, also, 27 R. C. L. 1283.

5.   Adverse use of water, see notes in 20 Am. St. Rep. 225; Ann. Cas. 1917A, 882.   See, also, 27 R. C. L. 1291.

7.   See 27 R. C. L. 1258, 1266.

8.   See 2 R. C. L. 230.

[76 Mont. 1.]

Water Rights—Deraignment of Title—Privity—Insufficient Showing.
  9.  Mere possession of a water right originated by another does not show privity between himself and that other; hence the possessor, relying upon the right as of the date at which it was initiated, must show some contractual relation between himself and the original appropriator in deraigning his title thereto.

Same—Decree—Arbitrary Fixing of Date of Appropriation—When Permissible.
  10.  Where the evidence justified the finding of the court fixing the relative priorities of the appropriations of water, a party is not injured by its action in fixing an arbitrary date, which may or may not correspond to the actual time of appropriation, so long as the priorities are not affected.

Same—Prospective Use of Water—Duty of Appropriator.
  11.  An appropriator of water is not required to make immediate use of it to the full extent of his needs at the peril of losing to a subsequent appropriator the portion which he does not so use; the use may be prospective and contemplated, provided he has present ownership or possessory right to the land upon which it is to be used, coupled with a *bona fide* intention to use it, and provided he proceeds with due diligence to apply the water to his needs.

---

  [1]  Judgments, 34 **C. J.**, sec. 450, p. 229, n. 83; sec. 451, p. 234, n. 92.
  [2]  Contracts, 13 **C. J.**, sec. 679, p. 620, n. 52.  Vendor and Purchaser, 39 **Cyc.**, p. 1378, n. 26; p. 1395, n. 80.  Waters, 40 **Cyc.**, p. 749, n. 79 New.
  [3]  Public Lands, 32 **Cyc.**, p. 1073, n. 10 New.  Waters, 40 **Cyc.**, p. 741, n. 1, 4.
  [4]  Waters, 40 **Cyc.**, p. 727, n. 62, 64, 65, 66.
  [5]  Adverse Possession, 2 **C. J.**, sec. 599, p. 269, n. 33.  Waters, 40 **Cyc.**, p. 728, n. 76.
  [6]  Waters, 40 **Cyc.**, p. 737, n. 67 New.
  [7]  Waters, 40 **Cyc.**, p. 701, n. 63; p. 705, n. 16; p. 709, n. 38, 38 New; p. 714, n. 84 New; p. 740, n. 97.
  [8]  Appeal and Error, 4 **C. J.**, sec. 2878, p. 908, n. 63; sec. 3190, p. 1168, n. 98.
  [9]  Waters, 40 **Cyc.**, p. 723, n. 34; p. 724, n. 42.
  [10]  Waters, 40 **Cyc.**, p. 734, n. 32; p. 737, n. 67 New.
  [11]  Waters, 40 **Cyc.**, p. 717, n. 96, 97; p. 737, n. 61 New; p. 740, n. 47.

---

*Appeal from District Court, Silver Bow County, in the Second Judicial District; O. F. Goddard, a Judge of the Thirteenth District, presiding.*

Action by F. L. St. Onge and wife against Charles U. Blakely and others.  From the decree, Charles U. Blakely and another perfected separate appeals.  Affirmed.

---

  11.  Appropriation of waters, see notes in 43 **Am. Dec.** 281; 60 **Am. St. Rep.** 802; 30 **L. R. A.** 679.  See, also, 27 **R. C. L.** 1265.

*Mr. W. N. Waugh* and *Mr. John A. Shelton,* for Appellant Charles U. Blakely, submitted an original and a reply brief; *Mr. Shelton* argued the cause orally.

The rule which admits evidence of the acts of the claimant, in the exercise of which he assumed to be the owner, admits declarations on the part of the claimant, with respect to the character of his possession because such declarations are nothing but verbal acts indicating present purpose or motive. (*Ricard* v. *Williams,* 7 Wheat. (U. S.) 59, 51 L. Ed. 398 [see, also, Rose's U. S. Notes] ; *Stockton Sav. Bank* v. *Staples,* 98 Cal. 189, 32 Pac. 936; *Cannon* v. *Stockmon,* 26 Cal. 535, 95 Am. Dec. 205; *Hays* v. *Lemoine,* 156 Ala. 465, 47 South. 97.)

There is no right in one person to tack his right to the use of water to that of another unless as between two there has been a transfer actually made and fully completed, of such right from one to the other either by operation of law, by gift or by sale, either verbal or in writing. (*Head* v. *Hale,* 38 Mont. 302, 100 Pac. 222.)

Where as here there has been no compliance with the statute prescribing certain steps which may be taken, the appropriation does not become complete prior to the application of the water to a beneficial use and, of course, the amount of the appropriation on any particular date cannot exceed the amount which has then been applied to beneficial use. (*Bailey* v. *Tintinger,* 45 Mont. 154, 122 Pac. 575; *Murray* v. *Tingley,* 20 Mont. 260, 50 Pac. 723; *Pabst* v. *Finmand,* 190 Cal. 124, 211 Pac. 11.)

A water right is appurtenant to land only when the ownership of the water right and of the land are in one person. (*Warren* v. *Senecal,* 71 Mont. 210, 228 Pac. 71; *Smith* v. *Denniff,* 24 Mont. 20, 81 Am. St. Rep. 408, 50 L. R. A. 741, 60 Pac. 398.)

The bar of the statute of limitations, fully run, is a vested right. (17 R. C. L. 674.) The effect of this rule of law is that after the statute of limitations had been in operation for any one ten-year period any interruption in the continuity of the possession or change in the adverse character of their

possession could not have any effect upon the bar of the statute or the prescriptive right acquired by adverse user.

*Mr. N. A. Rotering* and *Mr. A. C. McDaniel,* for Appellant Lynnie F. Boyce, submitted a brief; *Mr. Rotering* argued the cause orally.

The plaintiffs have not connected themselves with the title, if any, of Suprenant and Marceau to the water and water rights used at the arastra, or with any right Suprenant and Marceau may have had. Their attempt to claim the arastra water right, if any, and ditch, fails because they, as the courts put it, have not brought themselves into privity with these rights. (See *Kench* v. *Deegan,* 45 Mont. 245, 122 Pac. 746; *Head* v. *Hale,* 38 Mont. 302, 100 Pac. 222.)

The plaintiffs have no water right, because any water right of Suprenant and Marceau has been abandoned and was abandoned by the successors in interest of them, that is, by Davis and his predecessors. The evidence fails to show any use whatever of the water after the arastra was shut down until the time the plaintiffs claim they used it. Davis made no use of it. Downs made no use of it. Davis was a purchaser; he voluntarily did not use it and neither he nor anyone under him has asserted title to it. It is held in the case of *Haggin* v. *Saile,* 23 Mont. 375, 59 Pac. 154: "The abandonment of a water right is a question of fact to be determined from the acts and intention of the party who is alleged to have abandoned the right; mere nonuser of a water right by itself does not constitute an abandonment; but a voluntary nonuser of water by a purchaser of a water right, without any intention to resume use thereof, and without the assertion of possession or title for a number of years after purchase, and where such purchaser has permitted the water to be taken, appropriated and used by others adversely for years, warrants an inference of abandonment."

A water right is appurtenant to the land upon which it is used, and, unless abandonment is proved, a transfer of land

with its appurtenances conveys the interest of the grantor in any ditch or water right necessary to the use and enjoyment of or appertaining to the land. (*Beatty* v. *Murray P. M. Co.*, 15 Mont. 314, 39 Pac. 82; *Middle Creek D. Co.* v. *Henry*, 15 Mont. 558, 39 Pac. 1054; *McDonald* v. *Huffine*, 44 Mont. 411, 120 Pac. 792; *Tucker* v. *Jones*, 8 Mont. 225, 19 Pac. 571; *Lensing* v. *Day etc. Co.*, 67 Mont. 382, 215 Pac. 999.) It is shown by the evidence that the Cosby water right and ditch, the Virnoche water right and ditch and the Boyce water rights and ditches under the appropriation of 1891 are upon the lands belonging to Mrs. Boyce and her predecessors, that is, the heads of the Cosby and Virnoche ditches were upon the lands of the predecessors of Mrs. Boyce. Both the Cosby and the Virnoche ditches headed on what is now the mouth of Blacktail Canyon Placer. The lands which this placer now covers, and other lands, were obtained by Mrs. Boyce from the successors in interest of Cosby and Virnoche. The heads of the ditches under the appropriation of 1891 are and were upon the lands then belonging to Mrs. Boyce. Under such circumstances the water rights and ditches of Cosby and Virnoche and the water right and ditches of 1891 are not appurtenances to the lands on which appropriated, taken out and used, but are part and parcel of the lands. (*Smith* v. *Denniff*, 24 Mont. 20, 81 Am. St. Rep. 408, 50 L. R. A. 741, 60 Pac. 398.)

A squatter has the right to appropriate water for use on the land he possesses and occupies. (*Thomas* v. *Ball*, 66 Mont. 161, 213 Pac. 597; *Toohy* v. *Campbell*, 24 Mont. 13, 60 Pac. 396: *Bailey* v. *Tintinger*, 45 Mont. 154, 122 Pac. 575; *Sayre* v. *Johnson*, 33 Mont. 15, 81 Pac. 389; *Wood* v. *Lowney*, 20 Mont. 273, 50 Pac. 794.) A water right may be appurtenant to a squatter's land, and may be transferred with the land as an appurtenance. (*McDonald* v. *Lannen*, 19 Mont. 78, 47 Pac. 648; *Wood* v. *Lowney*, 20 Mont. 273, 50 Pac. 794.)

Water may be sold separately from land. ''The fact that all the water in the controversy was appurtenant to the land conveyed when the parties began negotiations is immaterial.

A water right is not an inseparable appurtenance to land in Montana. It may be sold in connection with or separate and apart from the land." (*Kofoed* v. *Bray,* 69 Mont. 78, 220 Pac. 532; *McDonnell* v. *Huffine,* 44 Mont. 411, 120 Pac. 792.)

*Mr. E. B. Howell* and *Mr. William Meyer,* for Respondents, submitted a brief; *Mr. Howell* argued the cause orally.

Appellant Blakely's first and second specifications of errors relate to the refusal of the court to permit him to introduce evidence of his predecessor's (George P. Bretherton's) statements as to his ownership of the water that was being used on the Bretherton ranch.

Bretherton claimed under an appropriation. The extent of his right was to be determined by the extent to which he had diverted and beneficially used the water so appropriated, and not by any declaration he might make as to his ownership. Such a declaration would be self-serving, no more admissible after his death than before.

Water appropriators on any stream stand in much the same relation to each other as tenants in common do, and the same rules as to adverse user might well apply. Ordinarily the possession by one tenant in common of part or even all of the common property is not notice to other tenants of a hostile claim of title on his part. To start the statute of limitations to running in his behalf, open and notorious acts or declarations, showing his claim of exclusive ownership, must be brought to the notice of his cotenants. (*Humbert* v. *Trinity Church,* 24 Wend. (N. Y.) 587; *Richard* v. *Williams,* 7 Wheat. (U. S.) 59, 51 L. Ed. 398 [see, also, Rose's U. S. Notes]; *Owen* v. *Morton,* 24 Cal. 373; *Tully* v. *Tully,* 71 Cal. 338, 12 Pac. 246; *Abernathie* v. *Consolidated Virginia Min. Co.,* 16 Nev. 269.) So the mere diversion, even the habitual diversion, of excessive amounts of water for irrigation by the upper claimants on any stream should not be construed as an adverse use, especially where they claim under notices of appropriation. The advantage which the upper claimants have as against the lower

ones is one of the great drawbacks to the irrigation system. An excessive diversion by an upper claimant should not be construed as done in hostility to the rights of the lower claimants. It may be done in the belief that the latter do not need the water, or that there is plenty for all, or through a faulty measurement of the amount diverted. On the other hand, the lower appropriator often is not aware of an infringement upon his rights when it really happens. He may know that his ditch is running low, but is unable to tell whether it is a shortage created by nature or by the wrongful act of man. Courts should be slow in adding to the advantage that the upper claimant holds by virtue of his location, the opportunity to either create or increase his right by adverse user.

The rule that declarations of ownership coupled with possession of real estate are admissible to prove adverse possession has no application here, since it is impossible for one to take such possession of a running stream as he can of a tract of land. Possession that is shared with others is not exclusive. (2 Corpus Juris, "Adverse Possession," secs. 199, 200.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This action was commenced by F. L. St. Onge and Eliza St. Onge against Charles U. Blakely, Lynnie F. Boyce and the city of Butte to obtain a decree fixing and determining the rights of the respective parties in and to the waters of Blacktail Deer Creek in Silver Bow county. The stream flows successively through the lands of Blakely, Thompson Park, owned by the city, the lands of Boyce, and lastly through the lands owned by the plaintiffs. The pleadings are in the usual form in such actions and allege ownership of fertile but semi-arid lands and the continued use thereon of the amount of water claimed by each of the respective parties since the date of appropriation, and set out the alleged rights of the claimants as follows:

The plaintiffs claim the right to the use of 150 inches of the waters of the stream by virtue of an appropriation made by

their predecessors in interest on January 26, 1877. Defendant Blakely claims the right to the use of 140 inches of the waters of said stream, appropriated by his predecessors in interest on June 1, 1889, and as a second cause of action claims the prior right to the use of such water by adverse user and prescription dating from the year 1892, and, in this connection, alleges that the rights of all the other parties to the suit are, as to him, barred by the statute of limitations. Defendant Boyce claims rights initiated by appropriation (1) by Maxine Virnoche, November 15, 1878; (2) by J. A. Cosby in the year 1878; (3) by John H. Curtis, Green Majors and James R. Boyce, July 8, 1885; and (4) by this defendant on September 9, 1891, which last appropriation is for 1,000 inches and includes all former appropriations. The city of Butte claims the right to use 150 inches of the water of said stream by virtue of an appropriation made by its predecessors in interest in the year 1869.

Each of the defendants alleges that, if any right was initiated by the predecessors in interest of the plaintiffs, such right was abandoned and lost by nonuser between 1882 "and the middle nineties." By stipulation filed, all parties agreed that the "affirmative allegation of each party should be deemed denied by the remaining parties."

At the close of the trial each party requested the court to make written findings and submitted proposed findings of fact, and thereafter the court made and filed its findings of fact and conclusions of law, and, at the same time, made and entered its decree awarding to the several parties to the action the following rights:

(1) To the plaintiffs jointly, 87 miner's inches of the waters of Blacktail Deer Creek and its tributaries, for use upon the lands described in the complaint, as of August 17, 1885, "prior and superior to the use thereof of each and all of the defendants."

(2) To the defendant Lynnie F. Boyce, 90 miner's inches of the waters of said stream for use upon the lands described

in her cross-complaint, as of date September 9, 1891, "superior to the use of all parties other than the plaintiffs."

(3) To Charles U. Blakely, 50 miner's inches of the waters of said stream for use upon the lands described in his cross-complaint, as of date May 1, 1892, and an additional 59 miner's inches of said waters as of the date of the commencement of this action.

(4) To the city of Butte, for use in Thompson Park, all the remaining flow of said stream and its tributaries, after the rights of other parties to the action "are satisfied and fulfilled."

These provisions conform to the findings of fact, with the exception of the date of the initiation of plaintiffs' right and certain findings respecting the Boyce right. As to plaintiffs' right the findings are to the effect that, on or about January 26, 1877, the predecessors in interest of plaintiffs made a valid appropriation of the waters of said stream by means of a ditch with a capacity of 183 miner's inches, and that, by mesne conveyances, plaintiffs became the owners of said right on August 17, 1885. Immediately after the filing of the findings of fact and of the decree, plaintiffs' counsel moved the court to correct the decree by substituting therein "January 26th, 1877," in lieu of "August 17th, 1885," and each of the defendants moved the court to set aside the findings made and substitute therefor his or her proposed findings. After hearing the several motions, the court granted the motion of plaintiffs and corrected the decree, and thereupon denied the motion of each of the defendants. From the judgment as corrected, the defendants Blakely and Boyce then perfected separate appeals.

Defendant Blakely makes thirty-eight assignments of error, and defendant Boyce thirty-nine. It will not be necessary to set out these assignments, as the great majority of them challenge the sufficiency of the evidence to support specific findings, and, in their entirety, they raise only the questions hereinafter discussed.

The evidence is voluminous, comprising more than 1,000 typewritten pages of the transcript and but a brief synopsis of the pertinent portions can be included in this opinion.

1. Had the court authority to correct its decree on motion of [1] the plaintiffs? By its findings the court prescribed what the judgment should be; having found that the plaintiffs' right was initiated in 1877, the declaration in the decree that their right should date from August 17, 1885, was not supported by the findings and did not "express what was actually decided," and was, in effect, a mere mistake in drafting the decree.

While a judgment once rendered as intended becomes final and can be revised or corrected only on appeal or on motion for a new trial (*Whitbeck* v. *Montana Central Ry. Co.*, 21 Mont. 102, 52 Pac. 1098; *State ex rel. Smith* v. *District Court*, 55 Mont. 602, 179 Pac. 831), courts have the power to correct or amend their judgments to the end that they will express what was actually decided or to grant the relief that was intended to be granted originally (*Keene* v. *Welsh*, 8 Mont. 305, 21 Pac. 25; *State ex rel. McHatton* v. *District Court*, 55 Mont. 324, 176 Pac. 608; *Barber* v. *Briscoe*, 9 Mont. 341, 23 Pac. 726; *State ex rel. Smith* v. *District Court*, above). The situation here was analogous to that in *Keene* v. *Welsh*, above, wherein it was held that a decree determining the rights of the several parties to the use of the waters of a stream was properly amendable on motion to the extent that the relief granted may be such as was intended.

2. The defendants contend that the evidence adduced is in-[2] sufficient to warrant the court's finding that F. L. St. Onge is the successor in interest of the original appropriators of the water he claims.

The evidence on this question discloses that on January 26, 1877, Joseph V. Suprenant and Antoine Marceau made an appropriation of all of the waters of Blacktail Deer Creek and Little Blacktail Deer Creek, a small tributary of Blacktail, for use in propelling a water-power arastra on the lands now

owned by plaintiffs; that they operated the arastra up to the fall of 1882, using the flow of both creeks, and in addition used some part of the water for irrigation upon the land. In the year 1882 the land, arastra, and water rights and ditches were sold at sheriff's sale on foreclosure proceedings, and no redemption thereof was had. The purchaser at the sheriff's sale received a deed and thereafter conveyed the property to 'one A. J. Davis. On August 17, 1885, Davis entered into a conditional sale contract with plaintiff F. L. St. Onge, by the terms of which Davis agreed to sell to St. Onge the land, arastra and other improvements and the water right and ditches for the sum of $2,000, to be paid in monthly installments of $100 each. This contract contained no provision for forfeiture, and the only reference therein to nonpayment of the install-ments is that, if the notes were not paid at maturity, they should thereafter pay interest at the rate of one per cent per month. No deed was to be executed until the full purchase price was paid. On the execution of the contract Davis gave to St. Onge a written order directing his agent in charge of the property to deliver possession thereof to St. Onge. St. Onge took possession and has ever since held the same; he paid $800 on the purchase price, when he discovered that Davis had no title to the land. He thereupon refused to make further payments, and Davis thereafter never demanded payment. St. Onge continued to use the water on the land and thereafter secured a homestead patent to one quarter-section thereof and a patent from the state of Montana for a second quarter-sec-tion, and Eliza St. Onge secured patent from the state to the third quarter-section. Asked what he received for the money he paid Davis, St. Onge testified that he got nothing as to the land, but he "got" the arastra, the improvements, the fences and the water right and ditches and reservoir.

On these facts, the court made the following finding, on which error is predicated: "While the title to the lands was never conveyed to plaintiff F. L. St. Onge, St. Onge, by virtue of the contract of Davis and the payment of a portion of the

consideration, and the continued possession, taken under the conditional sale, acquired a right to all of the property so sold to him by Davis, including the Suprenant and Marceau water right and ditches, * * * which the court finds constitute privity of title with Davis, which was good and subsisting as against all the world, excepting only Davis himself and his successors in interest, and Davis, not having taken steps to declare a forfeiture of the contract of purchase, created the presumption that he waived it." •

Counsel for defendants contend that the transaction between Davis and St. Onge, at the time the latter discovered the failure of title to the land, amounted to a rescission of the contract. The evidence, however, shows neither a rescission nor an attempt to rescind. In order to effect a rescission of a contract, when not effected by consent, the party rescinding "must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise. * * * " (Sec. 7567, Rev. Codes 1921; *Dyk* v. *Buell Land Co.*, 70 Mont. 557, 567, 227 Pac. 71; *Suburban Homes Co.* v. *North*, 50 Mont. 108, Ann. Cas. 1917C, 81, 145 Pac. 2; *Hollingsworth* v. *Ruckman*, 72 Mont. 147, 232 Pac. 180.) And, of course, if a contract is rescinded by mutual consent, each party must restore to the other what he has received under the contract. (*Hollingsworth* v. *Ruckman*, above.)

In this case each party has received something of value and neither restored nor offered to restore that which he had received; on the contrary, the purchaser clearly indicated his intention to retain all he had actually received under the contract, the principal items of which were the water right, ditches and reservoir, as the consideration for the amount he had already paid on the contract, and, by the retention of that amount, the seller acquiesced in this determination, or, as the trial court expressed it, the seller waived his right to declare a forfeiture. The contract was personal between Davis and St. Onge, and when neither Davis nor his personal representatives sought to

enforce a forfeiture, no mere stranger to the contract can now raise the question; paraphrasing the language employed in *McDonald* v. *Lannen,* 19 Mont. 78, 47 Pac. 648: If they did not care to take advantage of the forfeiture no one else can plead it for them.

But, counsel assert, St. Onge received no deed for the water [3] right. They are correct in their statement; but that fact does not affect the St. Onge right—no deed was necessary, for one who has settled upon and is in possession of public lands of the United States may convey his right in the same, together with a water right appurtenant thereto, orally and for or without consideration, to one who takes possession thereof. (*Middle Creek Ditch Co.* v. *Henry,* 15 Mont. 558, 39 Pac. 1054; *McDonald* v. *Lannen,* above; *Wood* v. *Lowney,* 20 Mont. 273, 50 Pac. 794; *Featherman* v. *Hennessy,* 42 Mont. 535, 113 Pac. 751.)

The findings complained of are supported and justified by the evidence.

3. It is next contended that the Suprenant and Marceau right [4] was abandoned and lost by nonuser between 1882 and 1896. It is true that there was no showing of use from the time of the sale of the property on foreclosure in December, 1882, up to the time St. Onge went into possession in 1885, except his testimony that, at that time Thompson, the keeper, had a small garden and that St. Onge's use from that time to 1896 was questioned, but the right was fully perfected prior to 1882 and thereupon became a property right of which the owner could only be divested in some legal manner. He could, thereafter use the water or not, as he saw fit, or he could abandon the right, but abandonment is a voluntary act involving a concurrence of an act and intent—the relinquishment of possession and the intent not to resume it for a beneficial use—neither alone is sufficient to bring about the abandonment of the right. (*Smith* v. *Denniff,* 24 Mont. 20, 81 Am. St. Rep. 408, 50 L. R. A. 741, 60 Pac. 398; *Moore* v. *Sherman,* 52 Mont. 542, 159 Pac. 966; *Thomas* v. *Ball,* 66 Mont. 161, 213 Pac. 597.)

Mere lapse of time, even in excess of the period prescribed in the statute of limitations, will not alone establish the abandonment of a water right or work a forfeiture thereof by nonuser, although it may constitute some evidence of an intention to abandon the right. (*McDonnell* v. *Huffine,* 44 Mont. 411, 120 Pac. 792; *Featherman* v. *Hennessy,* above; *Moore* v. *Sherman,* above; *Thomas* v. *Ball,* above.)

The evidence in this respect merely shows the nonuser of the water for an indefinite period while the owners were laboring under certain disabilities, and the resumption of the use thereof when possession was secured by those in a position to use the water, and the fact that other parties had, in the meantime, acquired junior rights, in no manner affected the owner's right to resume the use of his property. (*Moore* v. *Sherman,* above.)

4. Defendant Blakely asserts a right by adverse use and possession, claiming that he and his predecessors in interest used 140 inches of the waters of the creek for a period in excess of the statutory requirement, as against all the world and particularly against the plaintiffs and the defendant Boyce, and that these parties to the action are barred by the statute of limitations from asserting any right as against his said claim. In proof of this allegation Blakely called W. D. Bretherton, a son of his predecessor in interest, who first stated that his father used the water "without permission of any one." When called upon to give the statement on which he based his conclusion, the witness answered, "I heard my father say he had a prior right to the water he was using." The court thereupon struck the first statement from the record. A second witness testified to a like statement made in his presence by the elder Bretherton. Thereafter Blakely called one Fisher, but, on objection, this witness was not permitted to testify as to a conversation he had had with Bretherton; whereupon counsel for Blakely made an offer of proof to the effect that the witness would testify that "Bretherton stated to the witness that he [Bretherton] was the owner of the right to use the waters

that were being used on said place." The offer was excluded on objection that it was called for testimony which was immaterial, hearsay and but a self-serving declaration made by Bretherton. Error is assigned on the court's action in excluding this testimony.

Counsel for Blakely cite authorities to the effect that, in an action to establish title to real estate by adverse possession, such declarations made by the claimant are admissible to show that the possession was hostile and the quality and extent of the interest claimed, *etc.*, (*Stockton Bank* v. *Staples*, 98 Cal. 189, 32 Pac. 936; *Cannon* v. *Stockmon*, 36 Cal. 535, 95 Am. Dec. 205; *Ricard* v. *Williams*, 7 Wheat. (U. S.) 59, 51 L. Ed. 398 [see, also, Rose's U. S. Notes]; 2 C. J. 268), and assert that there is no difference in the character of proof required to establish adverse use of water and that of real estate. Counsel's statement is not strictly accurate. While in each instance the right is established by proof of hostile possession of another's property, with proof of other attendant circumstances, the hostile possession of lands may be shown by proof of "such acts of ownership and occupancy as are sufficient to 'hoist his flag' over the lands, so that all may observe it" (*Collins* v. *Thode*, 54 Mont. 405, 170 Pac. 940), and such exclusive possession of necessity ousts the true owner from the land, two parties may at the same time be in possession of water from a creek and neither hold adverse to the other; each may justly claim the right to use the water he is using, without affecting the rights of the other, and therefore, in order to constitute adverse possession of water, the burden is upon the claimant to show that his use of the water deprived the prior appropriators of water at times when such prior appropriators actually needed the water; the use does not become adverse until it interferes with the use thereof by the prior appropriators, and therefore proof merely that the claimant used water and claimed the right to use it is no proof whatever of adverse use. (*Zosel* v. *Kohrs*, 72 Mont. 564, 234 Pac. 1089; *Boehler* v. *Boyer*, 72 Mont. 472, 234 Pac. 1086; *Smith* v. *Duff*, 39 Mont. 374, 133 Am. St. Rep.

582, 102 Pac. 981; *Talbott* v. *Butte Water Co.,* 29 Mont. 17, 73 Pac. 1111.) While the elements of adverse possession of the two classes of property are the same, owing to the difference in their nature, the proof of hostile possession thereof necessarily differs. No error was committed in excluding the offer of proof.

5. In further proof of his claim of adverse possession, defendant Blakely called a surveyor to show the volume of water in the creek at certain times during the months of August, September and October of the year 1924, and then showed that at such times his use of the water did not leave sufficient water to fill the appropriations of the other parties to the action, but made no attempt to show when such parties had need of water when he was using it, and under the theory of his counsel such proof was not necessary, but his counsel state that the testimony of St. Onge himself shows that at certain times since 1898 Bretherton had deprived him of water when he needed it. That testimony, however, is to the effect that at such times St. Onge either demanded the water from Bretherton, who complied with the demand or St. Onge himself cut Bretherton's dam and turned the water down to his headgate. Evidence was also introduced on this phase of the case, tending to prove that Bretherton used water through the Shoup ditch, owned by Thompson and Talbott, and used the water with the permission of those owners.

Without further cumbering this opinion by a recitation of what the evidence tends to show, it is sufficient to say that Blakely's testimony fell far short of establishing a right by prescription or adverse use, and that there is nothing in the record to support the contention that the right of any party to the suit is barred by the statute of limitations.

6. It is next asserted by both Blakely and Boyce that there [6] is no evidence in the record warranting a decree in favor of plaintiff Eliza St. Onge and against these defendants.

If the decree had awarded a separate right to this plaintiff in addition to the right awarded F. L. St. Onge, and fixed

such right as of a date prior to 1891, there would be merit in this contention. Eliza St. Onge was not interested in the waters of the creek until the year 1889, when she married St. Onge, and she owned no land prior to 1906. This land, however, was a part of the land for which the predecessors in interest of St. Onge established their water right and on which St. Onge used that right after he acquired title thereto, operating upon all of the land as though it were his own.

The right to use water may be owned without regard to [7] the title to the land upon which the water is used; it is a possessory right which may be acquired by appropriation and diversion for a beneficial use; such a right can be acquired by a squatter on public lands, or one holding lands under contract for its purchase (*Toohey* v. *Campbell*, 24 Mont. 13, 60 Pac. 396; *Bailey* v. *Tintinger*, 45 Mont. 154, 122 Pac. 575; *Sayre* v. *Johnson*, 33 Mont. 15, 81 Pac. 389; *Wood* v. *Lowney*, above; *Thomas* v. *Ball*, above); and, once the right is acquired, its owner cannot be deprived thereof by a conveyance of the land by the land owner (*Warren* v. *Senecal*, 71 Mont. 210, 228 Pac. 71; *Smith* v. *Denniff*, above). It is therefore apparent that F. L. St. Onge was the owner of a valid and existing water right at the time Eliza St. Onge received patent for her land, and that such patent did not convey to her any portion of such right. There is, however, nothing in the record to show that the total amount of water awarded to the plaintiffs jointly was in excess of the award to which F. L. St. Onge was entitled, and by the award of a joint interest in that right to Eliza St. Onge, no one but St. Onge was injured, and, therefore, if error was committed it was a nonprejudicial error so far as the defendants are concerned. Error which did not and [8] could not prejudice a defendant does not warrant a reversal. (*Matthews* v. *Marsden*, 71 Mont. 502, 230 Pac. 775; *Atkinson* v. *Roosevelt County*, 71 Mont. 165, 227 Pac. 811; *State* v. *Cassill*, 71 Mont. 274, 229 Pac. 716.)

7. Defendant Blakely contends that, even though he be not [9] entitled to the first right on the creek on his proof of ad-

verse user, he is entitled to a right antedating that of defendant Boyce. His counsel seek to deraign title as follows: That on January 1, 1891, John Sweyze, a citizen of the United States, filed a notice of placer location of the Forlorn Hope placer claim, covering land inclosed within a fence, and that he and his successors worked the claim; that on the twenty-first day of June, 1892, John Sweyze conveyed the Forlorn Hope placer to George P. Bretherton and Robert J. Ball, and in 1893 Ball conveyed his interest to Bretherton; in 1903 Bretherton filed a desert claim upon this land; Bretherton died, and later his widow made relinquishment of the desert claim and filed a homestead entry on the land, which was thereafter conveyed to Blakely, with all water rights, ditches, *etc.* Sweyze lived on the land in 1890 and 1891, and in 1891 he put in some crop on the bench and irrigated it from the creek. Bretherton took possession in 1892 and conveyed to Blakely in 1913.

Had John Sweyze been the owner of the land on which he planted a crop which he irrigated from the creek in the season of 1891, defendant Blakely might be entitled to a water right as of the beginning of that season; but the record discloses that the Forlorn Hope placer claim was located on January 1, 1891, by John Sweyze and seven other locators, one of whom was Joseph Sweyze, who joined with John Sweyze in the conveyance to Bretherton and Ball. This deed does not purport to convey any water right other than the water right appurtenant to the placer claim, on which right the record is silent. Whatever this right might have been, but an undivided one-fourth interest was conveyed. If John Sweyze acquired an independent water right as a squatter upon the land, prior to its location as a placer claim, defendant Blakely is not shown to be the successor in interest of John Sweyze, as to this right; there is no privity between them. "Mere possession by one person of a water right originated by another does not show such privity. In order to make good his claim to the right as of the date at which it was initiated the possessor must show some contractual relation between himself and the original appropriator."

(*Kench* v. *Deegan*, 45 Mont. 245, 122 Pac. 746.) The deed from Sweyze to Bretherton and Ball does not show a contractual relation between the grantor and grantees, other than in connection with the Forlorn Hope placer claim, and whatever water right may have been acquired for working that claim, and as to this right, whatever it may have been, Bretherton and Ball acquired but a one-fourth interest.

The court, therefore, correctly declared in its findings that the rights of defendant Blakely were initiated at the time Bretherton, his predecessor in interest, went into possession in the year 1892.

8. The defendant Boyce likewise contends that the proof [10] adduced entitled her to a right as of an earlier date than that fixed in the decree.

There is evidence, of a rather unsatisfactory nature, to support this contention. The record discloses that one Maxime Virnoche in 1878 filed a notice of squatter's right on forty acres of land at the mouth of Blacktail Canyon and filed a notice of the appropriation of all of the waters of the creek ''to be taken out of said creek'' at a certain point. The notice does not mention a ditch constructed or to be constructed, and there is no evidence of the construction of a ditch by the appropriator, although certain witnesses testified to the use of a limited amount of water by him through a ditch described as being two feet wide at the top and one foot at the bottom, while other witnesses described this ditch as being the width of a plow furrow or a spade.

The bill of exceptions recites that the Virnoche right was duly sold to Boyce and the instrument admitted in evidence over the objection of other parties to the suit, but no such instrument appears in the record, and we are not advised as to its contents. On this evidence the court found that, as the record fails to disclose that he followed up his claim by constructing a ditch, * * * Virnoche acquired no water right under his said notice.''

On sufficient evidence the court found that "in the year 1881 a man by the name of Cosby, predecessor in interest of the defendant Lynnie F. Boyce, diverted not to exceed ten inches of the waters of Blacktail Deer Creek, by means of a small ditch, and irrigated a small garden near the  *  *  *  nine mile house." It also appears from the record that in the year 1897, in an action wherein Thompson and Talbott, the Butte Water Company, and Lynnie F. Boyce were parties, this defendant established a right to, and was awarded, 150 inches of the waters "initiated in the year 1879."

However, if error was committed in this regard, since we have determined that no error was committed in fixing the date of plaintiffs' right in 1877, a change in the date of this defendant's right would not benefit her, as her right would still be subsequent to that of the plaintiffs and prior to the rights of all other parties to the action. Where the evidence justifies the finding of the court fixing the relative priorities of the appropriations of water, a party is not injured by the action of the court in fixing an arbitrary date which may or may not correspond to the actual time of appropriation, so long as the priorities are not affected, for the dates are merely incidental to the question of priority. (*McDonald* v. *Lannen*, above.)

9. Complaint is made by each of the appealing defendants as to the amount of water awarded plaintiffs, and by defendant Blakely as to the amount of water awarded defendant Boyce.

(a) Without detailing the evidence, it is sufficient to say that it shows that the predecessors in interest of plaintiffs appropriated and used all of the waters of the creek in the operation of the arastra, and that approximately 150 acres of plaintiffs' lands are under cultivation. The evidence might therefore have justified even a greater award to plaintiffs.

(b) Defendant Blakely insists that the showing of the actual [11] amount of land irrigated by defendant Boyce at the time of the initiation of her right is not sufficient to justify the

award of ninety inches of water, and that her right must be measured by that showing.

The evidence establishes ownership in defendant Boyce of 132.7 acres of land capable of irrigation from the creek and ditches with a capacity of several hundred inches of water, and that in that vicinity one inch of water to the acre is required on bottom land and one and one-half inches on bench land. Mrs. Boyce testified that she has approximately eighty acres under cultivation, and could put more of her land under cultivation if she had the water to do so; that a part of the eighty acres is in gardens and part in meadow land on which hay is raised by irrigation. It further appears from her testimony that there was but a small garden on the place prior to the time she began leasing to Chinamen in 1892 or 1893.

O. M. Boyce, a son of this defendant, born in 1881, testified that his recollection extended to 1888 or 1889, and that approximately eighty acres of his mother's land have been under cultivation as long as he could remember, and particularly so as to the hay or meadow lands, the extent of which was fixed by other witnesses as from thirty to thirty-five acres.

It is not contended that by her policy of leasing to Chinamen or Koreans, beginning in either the year 1892 and 1893, this defendant did not put the waters of the creek to such beneficial use as would entitle her to the full amount awarded to her.

In *McDonald* v. *Lannen*, above, the broad rule was declared that "when an owner or possessor of land makes an appropriation of water in excess of the needs of the particular portion of the land upon which he conveys the water, and other portions of his land also require irrigation, his water right is not limited by the requirements of the particular fraction," but that he might thereafter apply the water to other portions of his land despite the fact that another's right has attached in the interim. This declaration was, in *Smith* v. *Duff*, 39 Mont. 382, 133 Am. St. Rep. 587, 102 Pac. 984, held to be too broad, and the rule was there announced that "the time when the

first appropriator dug his ditch, his diligence in applying the water to a beneficial use, the extent of the use made by him, his needs, and the circumstances surrounding all these acts, are to be considered in determining the amount which he is entitled to in preference to the subsequent appropriator.''

It is not requisite that the use of water appropriated be made immediately to the full extent of the needs of the appropriator. It may be prospective and contemplated, provided there is a present ownership or possessory right to the lands upon which it is to be applied, coupled with a *bona fide* intention to use the water, and provided that the appropriator proceeds with due diligence to apply the water to his needs. (*Wheat* v. *Cameron,* 64 Mont. 494, 210 Pac. 761; *O'Shea* v. *Doty,* 68 Mont. 316, 218 Pac. 658.)

From the evidence adduced it is not clear whether the full use of the water awarded Mrs. Boyce was made in 1892 or 1893, when gardening by tenants was extensively commenced upon her land; if in 1892, this use clearly antedated that of Bretherton, the predecessor in interest of Blakely, as Bretherton did not take possession until June of that year.

The evidence sufficiently shows the *bona fide* intention of this appropriator to use the water, and there is nothing to show lack of due diligence in applying the full amount of her water to a beneficial use. We cannot say that the evidence clearly preponderates against the findings of the court in this respect, and therefore cannot disturb those findings. (*Warren* v. *Senecal,* above.)

10. It is contended that the flow of Little Blacktail Deer Creek, a tributary of the main stream, was not taken into consideration in determining the amount of water awarded to plaintiffs, and that they were given this water in addition to the amount awarded them from Blacktail Deer Creek. There is nothing in the record to indicate what the flow of this tributary is; it is shown to be a small stream which dries up in July or August, but it is clearly shown to be a tributary of the main stream, and the decree fixes and determines the

rights of all parties to the suit in and to the waters of "Black-tail Deer Creek and its tributaries," without any mention of any particular tributary. While the record contains a statement that all parties to the suit concede to St. Onge the use of the waters of Little Blacktail Deer Creek, neither the findings of fact mention nor does the decree award him such a right, and his right must be measured by the decree. There is therefore no merit in the contention.

No prejudicial error appearing in the record, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.

Rehearing denied April 2, 1926.