VIDAL, APPELLANT, v. KENSLER ET AL., RESPONDENTS.

(No. 7,438.)

(Submitted October 31, 1935. Decided November 13, 1935.)

[51 Pac. (2d) 235.]

594

*Mr. S. P. Wilson,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Blackford & Blackford,* for Respondents, submitted a brief; *Mr. J. M. Blackford* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Mabel H. Vidal has appealed from a judgment decreeing the water rights out of Camp Creek, in Lincoln county. Those rights which are material to this appeal are as follows: Leslie Kensler, 120 miner's inches as of date June 15, 1904; Mabel H. Vidal, 60 miner's inches as of date May 18, 1905.

The only question presented for determination is as to whether or not the evidence adduced sustains the findings and decree granting Kensler priority of right over Vidal.

The date of an appropriation appearing in a water right ██ decree is material only in its relation to the question of priority. (*St. Onge* v. *Blakely,* 76 Mont. 1, 245 Pac. 532.) There is, therefore, no valid objection to the fixing of an arbitrary date of appropriation, and, if an incorrect date is given, the error is harmless unless the objecting claimant can show that his right antedates the date fixed for another instead of being subsequent thereto, as appears from the decree. (*Geary* v. *Harper,* 92 Mont. 242, 12 Pac. (2d) 276; *McDonald* v. *Lannen,* 19 Mont. 78, 47 Pac. 648.)

The record discloses that the predecessor of each of these contesting parties to the decree duly recorded a notice of water right pursuant to the provisions of the statute therefor. (Sec. 1255, 5th Div., Comp. Stats. 1887, now sec. 7100, Rev. Codes 1921.) These notices declare the actual dates of appropriation as follows: Vidal, March 30, 1905; Kensler, May 22, 1906; and constitute prima facie evidence that these are the correct dates of appropriation. (Sec. 1259, 5th Div., Comp. Stats. 1887, now sec. 7104, Rev. Codes 1921.) However, a valid appropriation of water may be acquired even where there has

been no compliance with the statute regulating appropriations by record, where the water is actually diverted from the stream and applied to a beneficial use; compliance is important only with regard to the doctrine of "relation back" (sec. 1257, 5th Div., Comp. Stats. 1887, now sec. 7102, Rev. Codes 1921), on due compliance. (*Murray* v. *Tingley*, 20 Mont. 260, 50 Pac. 723; *Donich* v. *Johnson*, 77 Mont. 229, 250 Pac. 963.)

A prima facie showing may always be rebutted, and if the evidence warrants the finding that the Kensler appropriation antedates that of Vidal, the court was justified in fixing the priorities as it did, notwithstanding the declaration of Kensler's predecessor that he did not appropriate the water until 1906 (*Bielenberg* v. *Eyre*, 44 Mont. 397, 120 Pac. 243), and, unless it is here shown that the evidence decidedly preponderates against such finding, the decree will not be disturbed (*Allen* v. *Petrick*, 69 Mont. 373, 222 Pac. 451; *Warren* v. *Senecal*, 71 Mont. 210, 228 Pac. 71; *Wheat* v. *Cameron*, 64 Mont. 494, 210 Pac. 761). On the vital question for consideration but two witnesses spoke.

One L. J. Monio, called by the plaintiff, testified that Griffin, Vidal's predecessor, settled on the Vidal place "about 1905 or six" and constructed his ditch "in short order," and that Gladwyn, Kensler's predecessor, "had a ditch there just about that time." No other witness attempted to fix the time of the Griffin appropriation, and, in view of the fact that this witness was not certain as to the year, while Griffin under oath fixed the date as March 30, 1905, this testimony does not affect the prima facie evidence made by the recorded notice of water right.

One Frank Swanson, called by Kensler, testified that he came to the neighborhood in 1892 and that he did some plowing for Gladwyn "about '94, I guess." Thereupon the examination proceeded as follows:

"Q. 1904? A. 1904 or 5, somewhere about that.

"Q. In the early part or latter part? A. In the spring of the year.

"Q. In the spring of 1904? A. Yes."

The witness then testified that at the time he did the plowing he observed the Gladwyn ditches with water flowing therein; whereupon he was asked the question: "In the spring of 1904? A. Yes." On cross-examination the witness was tested as to his memory of past events and answered each question in the manner employed in telling when he worked for Gladwyn. Thus he testified that he became acquainted with one Moore, who occupied the Kensler land before Gladwyn, "in about '90 or 92, * * * it might have been 1903"; that the World War started "in '14 or '15, I think, I ain't quite sure," and ended in " '18— '17 or '18— I did know at the time but I kind of forgot." He "couldn't say" that he remembered President Harding. The witness was then asked the question:

"Going back to Mr. Gladwyn, you wouldn't remember that particularly, no reason why you should remember that it was in 1904 that you worked for him, is there? A. Well not exactly, but it was about that time.

"Q. Might have been 1905? A. Yes, it could have been.

"Q. And it could have been 1906? A. No, no I don't think so.

"Q. Now, if Mr. Gladwyn in 1906 filed a notice of water right in which he says that he appropriated water in 1906, wouldn't that make you think that it was in 1906 that you worked for him? A. No. * * *

"Q. It was Mr. Blackford who suggested 1904 as being the proper year, wasn't it? A. It could have been either one of those years.

"Q. And Mr. Blackford thought it was 1904? A. Yes.

"Q. And you thought that was just as good a year as any? A. Yes, to the best of my recollection. (Objection to this last question was interposed after it was answered and the objection sustained.) "

On redirect examination the witness was asked:

"Q. Well, you testified that he was on the place in 1904, did you not? A. Yes, about that time.

"Q. Yes, and in answer to cross-examination you said that it might have been 1905 that you worked for Gladwyn? A. It

could have been; it is so long ago I have forgotten''; and after further interrogation he declared, ''Well, it was somewhere about 1904.''

In our determination of the sufficiency of this evidence, the familiar rule, applicable where there exists a conflict in the evidence, that the trial court, having seen the witnesses on the stand and heard them testify, is in a better position to judge of the weight and credibility of the evidence, has no application here. In this case Kensler made a prima facie case by the introduction of the recorded notice fixing the date of his appropriation as in 1906; he then sought to overcome that prima facie case by oral evidence to the contrary, and we are called upon to determine whether or not, giving the testimony the utmost credit to which it is entitled, it can possibly have that effect.

Supported by the testimony of Monio, quoted above, Swanson's testimony may be sufficient to set the Gladwyn appropriation back one year prior to the date stated in the recorded notice, although the fact is disclosed that Moore had a ditch on the land prior to the coming of Gladwyn, and that the latter did not succeed to his rights. It is, however, immaterial here whether this is so or not, as such setting back would still leave the Kensler right subsequent to that of Vidal, in point of time.

To sustain the decree, based on oral testimony, as against the recorded notice, the testimony should be clear, unambiguous and convincing, and yet it is apparent that here the witness had no distinct recollection of the date fixed by adroit examination, and was in the possession of no knowledge of any collateral fact by which he could ascertain or fix the time of his visit to the premises. Of this sort of evidence it has been said that, ''as witnesses are proverbially inaccurate as to dates, courts have little or no faith in a witness' recollection of dates or the time of day of events if he has no collateral fact by which he ascertains or fixes them.'' (23 C. J. 36, and cases cited.)

The witness admitted freely that his visit might as well have been in 1905 as in 1904, and the best that can be said of his testimony, taken as a whole, is that his recollection of a long

past event, by employing an unusually faulty memory, is that "it was somewhere about 1904." Such a statement is too indefinite for acceptance in fixing a material date, as it is elastic enough to cover a period extending back into 1903, and forward into 1905. (See *Bettendorf Patents Co.* v. *Little Wheel Co.*, 123 Fed. 433, 59 C. C. A. 473, certiorari denied 195 U. S. 628, 25 Sup. Ct. 787, 49 L. Ed. 351; *Gordon* v. *Journal Pub. Co.*, 81 Vt. 237, 69 Atl. 742; *Hedges* v. *Roach*, 16 Neb. 673, 21 N. W. 404; *Alexander* v. *McNear*, (C. C.) 28 Fed. 403.)

"It has become a truism in the legal profession that— 'The testimony of a witness is no stronger than it is made by his cross-examination.' " (*State* v. *Ritz*, 65 Mont. 180, 211 Pac. 298, 300.) Here the witness on cross-examination admitted that the time of his visit might just as well be fixed as in 1905 as in 1904, though he denied that it could have been in 1906, and his testimony on direct and redirect was little better.

When the testimony of a witness is sufficient to prove an act or transaction within a certain period, but is so vague and uncertain as not to fix the time within that period, the best that can be done for the party producing such witness is to fix the date at the end of the period. (*Gans* v. *Olchin & Co.*, 109 Conn. 164, 145 Atl. 751, 63 A. L. R. 428; *Byers* v. *Fowler*, 14 Ark. 86.) Applying this rule, Kensler's right could not be given a date earlier than 1905, nor, within that year, earlier than the last of "spring."

The trial court therefore erred in awarding Kensler a right "as of date June 15, 1904," and, that date being prior to the date given the Vidal right, the error was prejudicial.

The judgment is reversed and the cause remanded to the district court of Lincoln county, with direction to modify the decree by awarding Kensler his right as of date June 15, 1905.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the foregoing decision.