No. 80-138

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

79 RANCH, INC., a Montana Corporation, and
HARRY VANDERVOORT,

            Plaintiff and Appellant,

    vs.

REUBEN C. PITSCH,

            Defendant, Respondent and Cross-Appellant.

Appeal from:   District Court of the Fourteenth Judicial District,
               In and for the County of Golden Valley.
               Honorable  LeRoy McKinnon, Judge presiding.

Counsel of Record:

    For Appellant:

        Ask and Pratt, Roundup, Montana
        Thomas Ask argued, Roundup, Montana

        Moulton, Bellingham, Longo and Mather, Billings, Montana
        Corrine Courtney argued, Billings, Montana

    For Respondent:

        Felt and Lalonde, Billings, Montana
        Laurence R. Martin argued, Billings, Montana

                        Submitted:  January 15, 1981

                        Decided:  July 9, 1981

Filed:  JUL 9 - 1981

_Thomas J. Kearney_
                    Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

This case involves adjudication of the water rights of three users of water from Big Coulee Creek in Golden Valley County. The users are Reuben C. Pitsch, the upstream user; 79 Ranch, Inc., a Montana corporation, the midstream user; and Harry Vandervoort, the downstream user. Both the upstream user and midstream user appeal from a judgment of the Golden Valley District Court which held in effect, that the water rights of the upstream user started in 1976, when they were first put to beneficial use, and that the water rights of the midstream user start in 1973, when an appropriation was filed and the water put to a beneficial use. Both the upstream and midstream users claim water rights dating back to 1893 when a predecessor in interest, The Montana Cattle Company, first filed a claim to use the water. Both the upstream and midstream users claim that the water rights were later put to a beneficial use, and that they were not abandoned.

This case started when the upstream user, Reuben Pitsch, was taking large quantities of water from Big Coulee Creek during the exceedingly dry spring and summer of 1977. His water use considerably cut off the water supply available to both the midstream user and the downstream user. When efforts at negotiation failed, the midstream user and downstream user filed suit and asked for a declaratory judgment determining the water rights as between the parties. They also asked for a permanent injunction and damages. The trial court decided only the relative rights of the parties, and left the other matters to be resolved in further proceedings.

In declaring the water rights of all three parties, the trial court entered only bald findings and conclusions, leaving no basis for this Court to examine the rulings to determine how these findings and conclusions were reached. For this reason, we must remand this case to the District Court and we direct that it enter findings and conclusions that are reflective of the evidence presented at trial and the legal contentions of the parties. The findings and conclusions presently before this Court provide no basis for meaningful review.

We set out in this opinion why the findings and conclusions are insufficient. We consider separately the findings and conclusions made determining the relative water rights of each party.

(a)  Water Rights of the Upstream User--Reuben Pitsch:

The upstream user, Reuben Pitsch, claimed a water right arising from an 1893 notice of appropriation by The Montana Cattle Company, a predecessor in interest. He claimed further that during the 1920's his predecessors in interest put the water to beneficial use by actually irrigating the land. Testimony and other evidence was presented in support of these claims. The upstream user also presented evidence of a notice of appropriation filed in 1973 to use water from Big Coulee Creek.

As to the 1893 water right claim, the trial court failed to analyze any of the evidence, but simply stated in a finding that the upstream user "failed to prove by a preponderance of the evidence his alleged water right of a one-third interest in 500 inches of Big Coulee Creek, which water right was allegedly filed by The Montana Cattle Company; for 500 inches on April 1, 1893, Book 22-257." That is it. The trial court does not explain why this 1893 claim was not proved.

As a safety valve, the trial court in the next finding, again without any analysis, found that "Pitsch and his predecessors in interest abandoned their alleged interest in any claimed or asserted water rights appurtenant to their real property, prior to 1976 by non-user for a proven period running from 1911 to 1976 coupled with proof of voluntary relinquishment of any claimed water right and an intent not to resume possession thereof for a beneficial use."

By these findings, the upstream user's claimed water rights were denied. These findings are so conclusory, so general, that we cannot tell why the trial court ruled that the upstream/user did not establish a water right, and we cannot tell why the trial court held in effect that the upstream user, through his predecessors in interest, had abandoned any claimed water right.

In the last finding relating to the upstream user, the trial court found that the first proved water right was an appropriation dated May 30, 1973 by Bert Schaff, the predecessor in interest to the upstream user. But the trial court also found that the "water was first put to a beneficial use in July, 1976 on 68 acres on Section 35, Township 5 North, Range 19 East, M.P.M." No explanation is provided as to why the trial court found that the water was first put to a beneficial use in 1976.

From these findings, the trial court set the water priority of the upstream user at 68 inches dating from July 1, 1976, and then entered a conclusion of law that the upstream user had only proved a right to 68 inches dating from July 1, 1976.

These findings and conclusions are so inadequate that they cannot form the basis for a reviewable judgment.

-4-

(b) <u>Water Rights of the Midstream User--79 Ranch</u>
<u>Inc.</u>:

The midstream user, 79 Ranch Inc., also claimed in 1893 an 1893 interest arising from a claim filed by its predecessor in interest, the Montana Cattle Company. Testimony and other evidence was admitted in support of this claim. Testimony and other evidence was also admitted in support of a water right appropriation filed on July 13, 1973.

The court made three conclusory findings on the claims of the midstream user. As to the 1893 water right claim, the trial court failed to analyze any of the evidence and simply found that "the Plaintiff 79 Ranch has failed to prove by a preponderance of the evidence its alleged water right of a one-sixth interest in 500 inches of Big Coulee Creek, which water right was alleged filed by The Montana Cattle Company for 500 inches on April 1, 1893, Book 22-227."

Again, as a safety valve, the trial court also found that "79 Ranch and its predecessors in interest abandoned its alleged interest in any claimed or asserted water rights appurtenant to its real property, prior to 1976 by non-user for a proven period running from 1913 to 1976 coupled with proof of voluntary relinquishment of any claimed water right and an intent not to resume possession thereof for a beneficial use." Any analysis of why abandonment of a claimed water right has occurred is totally lacking.

By these findings, the midstream user's claimed water rights were denied. These findings are so conclusory, so general, that we cannot tell why the trial court ruled that the midstream user did not establish a water right based on an 1893 claim, and we cannot tell why the trial court held in effect, that the midstream user, through his predecessors

in interest, and his own action or nonaction, had abandoned any claimed water right.

In the last finding relating to the midstream user, the trial court found that the first proved water right "is that appropriation of Eugene Schaff et ux, dated June 13, 1973, for 30 cubic feet of Big Coulee Creek for sprinkler irrigation, filed on behalf of the plaintiff 79 Ranch, which water was first put to a beneficial use on June 13, 1973 on 45 acres on Section 5, Township 5 North, Range 19 East, M.P.M."

From these findings, the trial court set the water right priority of the midstream user at "45 inches for use on SW 1/4 Section 25-5N-19E., with priority date as of June 13, 1973," and then entered the same as a conclusion of law.

Again, we must state that these findings and conclusions are so inadequate that they cannot form the basis for a reviewable judgment.

(c) Water Rights of the Downstream User--Harry Vandervoort:

The trial court entered three findings giving the downstream user water rights arising out of three separate appropriation dates: 1,000 inches arising from a recorded right of April 21, 1902; 320 inches arising from a recorded water right of December 11, 1925; and 300 inches arising from a recorded water right of June 11, 1926. (Emphasis added.) In the next finding, the trial court stated that the downstream user "has proved diversion and actual irrigation of the lands under said water rights as of the year 1924 by the testimony of E. J. Dolve, Sr." (Emphasis added.) The trial court did not explain the diversion and appropriation in 1924 of water right claims filed in 1925 and 1926.

The trial court then found that each of these water rights had been consolidated "into two tracts totalling approximately 50 acres . . . ."

-6-

From these findings, the trial court established a priority date for the downstream user as of June 1, 1924, and also entered the same as a conclusion of law.

Again, we must state that these findings and conclusions are so inadequate that they cannot form the basis for a reviewable judgment. As in the case of the upstream user and the midstream user, we must remand this case to the trial court to enter more adequate findings and conclusions on the claims of the downstream user.

The judgment as to each party is vacated and this cause is remanded for entry of proper findings and conclusions.

_Daniel J. Shea_
Justice

We Concur:

_Gene B. Daly_

_John Conway Harrison_

_John C. Sheehy_

Justices

Mr. Justice Frank B. Morrison, Jr., dissenting:

I respectfully dissent from the majority opinion. There is, in my opinion, a sufficient record before this Court to determine the issues at bar.

This dissent does not discuss evidence respecting the existence of water rights claimed by the upstream and midstream users dating back to 1893. The trial court found that these rights had been abandoned. The basis of that finding is not clear. However, the rights had not been used for at least 50 years. I would hold that such a continuous nonuse creates a rebuttable presumption of abandonment. To rebut this presumption of abandonment, there must be established, not merely expressions of desire or hope, but some fact or condition excusing long periods of nonuse. CF & I Steel Corporation v. Purgatoire River (Colo. 1973), 515 P.2d 456. Also see Cundy v. Weber (S.Dak. 1941), 300 N.W. 17; City of Anson v. Arnett (Tex. 1952), 250 S.W.2d 450.

The argument is here made by the upstream user that predecessors in interest did not have sufficient funds to irrigate. In replying to the same argument, the Colorado court, in CF & I Steel, said:

> ". . . Considering the large demands for all of the appropriatable water in this state . . . it might be said that nearly every abandoned water right could have its non-use justified by the economics that might prevail sometime in the future for use of this water . . . This gleam-in-the-eye philosophy is not consistent with the protection and preservation of existing water rights." CF & I Steel, 515 P.2d at 458.

There is sufficient evidence of nonuse to justify affirmance of the trial court's finding of abandonment.

The downstream user claims 50 inches of water under a notice of appropriation filed in 1926 for 300 inches. The upstream user contends that 20 inches of this water should

have a priority date after 1941. Since the upstream user cannot show he is entitled to any water right with a priority date between 1926 and 1941, he has no standing to contest the downstream user's priority dates; the question is not properly before this Court. Vidal v. Kensler (1935), 100 Mont. 592, 594, 51 P.2d 235.

The predecessor in interest to the upstream user filed for 30 cubic feet per second on May 30, 1973. The predecessor ordered a sprinkler system capable of irrigating at least 320 acres. This system was not used because necessary parts were never delivered. In August of 1975, the upstream user purchased the land in question including water rights and the predecessor's irrigation system. The upstream user was unsuccessful in obtaining the necessary parts and as a consequence, he purchased a new sprinkler system and installed it in the winter of 1975-1976. The system consists of a 1200 gallon per minute pump on the creek which feeds a pivot sprinkler having two 160-acre settings. The upstream user is presently irrigating 320 acres.

The trial court found that the upstream user first put water to a beneficial use in July 1976 but did not make any specific findings on the question of whether the upstream user's predecessor proceeded with reasonable diligence after filing in 1973. If purchase of the irrigation equipment was not diligence, then the upstream user would not have a water right. If the upstream user's claim results from application to a beneficial use in July 1976, the upstream user would have nothing because of failure to file under the 1973 act. Nevertheless the trial court found that the upstream user was entitled to 68 inches of water, the same being the amount first appropriated in July of 1976.

For the trial court to be upheld with respect to its finding that the upstream user was entitled 68 inches of water, the trial court would have necessarily had to find reasonable diligence on the part of the upstream user's predecessor in interest. We should invoke the doctrine of implied findings which would then establish that the upstream user's predecessor in interest had exercised reasonable diligence after filing in 1973 and that the 1973 filing was alive at the time of the first beneficial use in July 1976. Subsequent applications to beneficial use were pursuant to the "reasonable diligence" exercised in 1973. I would find that the 320-inch application presently in place, was the culmination of a plan starting in 1973 and that the upstream user therefore has a 320-inch water right dating from May 30, 1973.

The midstream user filed June 13, 1973, and thereafter purchased an irrigation system. The midstream user, under this filing, has perfected a water right to that amount of water which has been put to a beneficial use pursuant to the 1973 filing.

The trial court found that the midstream user had applied 45 inches of water for the purpose of irrigating 45 acres of land. However, the evidence shows that only 30 acres of land was irrigated. I would, therefore, find that the midstream user has a 30-inch water right dating from June 13, 1973.

I would remand this case to the District Court with directions to enter judgment in accordance with the views expressed in this dissenting opinion.

_____
Justice