No. 82-361

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

79 RANCH, INC., a Mont. corp.,
and HARRY VANDERVOORT,

       Plaintiffs and Respondents,

  -vs-

REUBEN C. PITSCH,

       Defendant and Appellant.

Appeal from:  District Court of the Fourteenth Judicial District,
In and for the County of Golden Valley,
The Honorable LeRoy McKinnon, Judge presiding.

Counsel of Record:

    For Appellant:

        Felt & Martin; Laurence R. Martin argued, Billings,
        Montana

    For Respondents:

        Ask & Pratt: Thomas M. Ask argued, Roundup,
        Montana
        Moulton, Bellingham, Longo & Mather; William
        Mather argued & William Forsythe argued, Billings,
        Montana

                      Submitted:  April 7, 1983

                        Decided:  June 21, 1983

Filed:  JUN 21 1983

_Ethel M. Harrison_
                  Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Plaintiffs, 79 Ranch and Harry Vandervoort, began this action in 1977 seeking to enjoin defendant Pitsch from using water in Big Coulee Creek, and seeking a determination of each party's water rights in the creek. After a hearing, the District Court entered scant findings and established the following water rights and priorities:

> "(a) Vandervoort -- 50 inches for use on W$\frac{1}{2}$ Section 23-6N-21E., with priority date as of June 1, 1924.
>
> "(b) 79 Ranch -- 45 inches for use on SW$\frac{1}{4}$ Section 25-5N-19E., with priority date as of June 13, 1973.
>
> "(c) Pitsch -- 68 inches for use on Section 35-5N-19E., with priority date as of July 1, 1976."

Pitsch and 79 Ranch appealed from this judgment, but the case was remanded for further findings by the District Court. See, 79 Ranch, Inc. v. Pitsch (1981), _____Mont._____, 631 P.2d 690, 38 St.Rep. 1048. On remand, the District Court amended its findings and conclusions, and then reentered the original judgment quoted above. Pitsch and 79 Ranch again appeal.

Pitsch, 79 Ranch, and Vandervoort own land along Big Coulee Creek in Golden Valley County, Montana. Pitsch lives immediately upstream of 79 Ranch. Vandervoort's ranch is about eighteen miles downstream.

In 1975, Pitsch bought his land from Bert Schaff. Bert Schaff had decided to begin irrigating his land in 1973 and filed a notice of appropriation for 30 cubic feet per second (c.f.s.) of water. He ordered a sprinkler system, but didn't receive all of the necessary parts and therefore never irrigated. When Pitsch bought the land and water rights, he installed a different sprinkler system and began irrigating in July 1976.

79 Ranch, operated by Eugene Schaff, also filed a notice of appropriation and ordered a sprinkler system in 1973. 79 Ranch installed the sprinkler system, similar to the one ordered by Bert Schaff, and began irrigating in July 1973.

Pitsch and 79 Ranch claim a portion of a water right

established in 1893 by the Montana Cattle Company. Montana Cattle Company had filed a notice of appropriation and irrigated, by a series of ditches, land now owned by Pitsch and 79 Ranch. Testimony at trial indicated that irrigation by Montana Cattle Company stopped in 1911 or 1913.

Pitsch also claims a separate water right stemming from two notices of appropriation filed by Claude Hill, a successor in interest to 1/3 of the Montana Cattle Company water right and predecessor to Pitsch. These notices did not comply with the statutory procedures. Testimony at trial indicated that a few acres of Pitsch's land was irrigated in the 1920's. No firm evidence was presented, however, showing exactly when the ditches were used, how much water they carried, and which lands were irrigated at which times.

Vandervoort traces his water right from four notices of appropriation: 1,000 miner's inches filed in 1902, 100 miner's inches filed in 1909, 320 miner's inches filed on June 11, 1925, and 300 inches filed in 1926.

The dispute here arose in the dry summer of 1977. 79 Ranch and Vandervoort claim that when Pitsch began irrigating in June of 1977, there was insufficient water in the creek for their cattle and fields. Negotiations failed and this lawsuit followed.

While the main issue on appeal is whether the water rights claimed by Pitsch and 79 Ranch were abandoned, Pitsch has also raised the following other issues on appeal:

1. Whether the District Court erred by failing to find that Pitsch's predecessor in interest, Claude Hill, had acquired a water right in the 1920's.

2. Whether the District Court erred by finding that Bert Schaff failed to exercise reasonable diligence.

3. Did the District Court err in finding that Vandervoort's right to use 50 inches of water has a priority date of June 1, 1924?

4. Did the District Court err in finding that 79 Ranch may

appropriate 45 inches of water under the June 13, 1973, notice of appropriation filed by Eugene Schaff?

The District Court found that the water rights claimed by Pitsch and 79 Ranch had been abandoned because the water had not been used for at least forty, and perhaps as many as sixty successive years. Pitsch and 79 Ranch argue that the mere showing of nonuse even for a long period of time, is not sufficient to support a finding of abandonment. We disagree.

Abandonment of a water right is a question of fact. Section 89-802, Revised Codes of Montana, 1947, (applicable here, repealed in 1973). Our scope of review is therefore limited to determining whether there is sufficient evidence to support the District Court's findings. Bagnell v. Lemery (1983), _____Mont. _____, 657 P.2d 608, 40 St.Rep. 58. Forty years of nonuse is strong evidence of an intent to abandon a water right, and, in effect, raises a rebuttable presumption of abandonment. Because Pitsch and 79 Ranch have failed to rebut this presumption, the District Court's finding must be affirmed.

The appropriation of water is based on its beneficial use. When the appropriator or his successor in interest abandons or ceases to use the water for its beneficial use, the water right ceases. Section 89-802, R.C.M., 1947 (repealed 1973). This fundamental principle has long governed the determination of water rights in Montana. In Power v. Switzer (1898), 21 Mont. 523, 55 P. 32, this controlling policy of beneficial use was explained:

> ". . . It has been a mistaken idea in the minds of many, not familiar with the controlling principles applicable to the use of water in arid sections, that he who has diverted, or 'claimed' and filed a claim of, water for any number of given inches, has thereby acquired a valid right, good as against all subsequent persons. But, as the settlement of the country has advanced, the great value of the use of water has become more and more apparent. Legislation and judicial exposition have, accordingly, proceeded with increasing caution to restrict appropriations to spheres of usefulness and beneficial purposes. As a result, the law, crystalized in statutory form, is that an

> appropriation of a right to the use of running water flowing in the creeks must be for some useful or beneficial purpose, and when the appropriator, or his successor in interest, abandons and ceases to use the water for such purpose, the right ceases. (Sections 1880, 1881, Civil Code.)" 21 Mont. at 529.

Water rights have therefore been limited to the amount of water actually put to a beneficial use, despite the amount of water diverted or claimed under a notice of appropriation. See also, Conrow v. Huffine (1914), 48 Mont. 437, 138 P. 1094; Peck v. Simon (1935), 101 Mont. 12, 52 P.2d 164; Galiger v. McNulty (1927), 80 Mont. 339, 260 P. 401.

In determining the abandonment of a water right, this Court has often recognized the rule that mere nonuse of the water does not constitute abandonment. To prove abandonment, one has to prove the other party intended to abandon his water right. Atchison v. Peterson (1872), 1 Mont. 561, _____P._____; Tucker v. Jones (1888), 8 Mont. 225, 19 P. 571; Thomas v. Ball (1923), 66 Mont. 161, 213 P. 597; Musselshell Valley F. & L. Co. v. Cooley (1929), 86 Mont. 276, 283 P. 213; St. Onge v. Blakely (1926), 76 Mont. 1, 245 P. 532; Shammel v. Vogl (1964), 144 Mont. 354, 396 P.2d 103.

Nevertheless, several Montana cases have also recognized that nonuse, while not conclusive, is evidence of an intention to abandon. In Smith v. Hope Mining Co. (1896), 18 Mont. 432, 45 P. 632, this Court stated that nine years of nonuse "is certainly very potent evidence, if it stood alone, of an intention to abandon." 18 Mont. at 438. In our most recent case considering this issue, Holmstrom Land Co. v. Meagher Cty. Newlan Creek Water District (1980), _____Mont._____, 605 P.2d 1060, 37 St.Rep. 295, we stated that seventy-five years of nonuse is "clear evidence" of abandonment. 605 P.2d at 1069.

Here, the evidence clearly shows at least forty years of continuous nonuse of the water rights claimed by Pitsch and 79 Ranch. As in Smith and Holmstrom, such a long period of nonuse is strong evidence of an intent to abandon the water rights. In

effect, such a long period of continuous nonuse raises the rebuttable presumption of an intention to abandon, and shifts the burden of proof onto the nonuser to explain the reasons for nonuse. This conclusion is highly consistent with the fundamental policy that a water right does not mean <u>possession</u> of a quantity of water, but its beneficial <u>use</u>.

The Colorado Supreme Court recently expressed well how the burden of proof shifts onto the nonuser once a long period of nonuse has been shown:

> "Under Colorado water law, abandonment of a water right requires a concurrence of nonuse and intent to abandon. However, intent is the very essence of abandonment. . . . Intent may be shown either expressly or by implication, with nonuse for a long period of time being evidence of an intent to abandon. . . . Nonuse alone will not establish abandonment where the owner introduces sufficient evidence to show that during the period of nonuse there never was any intention to permanently discontinue the use of water." [Citations omitted.] Beaver Park Water, Inc. v. City of Victor (1982), _____ Colo. _____, 649 P.2d 300, 302.

To rebut the presumption of abandonment, there must be established some fact or condition excusing long periods of nonuse, not merely expressions of desire or hope. C F & I Steel Corporation v. Purgatoire River Water Conservation District (Colo. 1973), 515 P.2d 456; Cundy v. Weber (S.Dak. 1941), 300 N.W. 17; City of Anson v. Arnett (Tex. 1952), 250 S.W.2d 450.

Here, Pitsch argues that his predecessors in interest did not have sufficient funds to irrigate. Such a broad claim, unsupported by more specific evidence, is not sufficient to rebut the presumption of abandonment. In response to this same argument, the Colorado Court has stated:

> ". . . Considering the large demands for all of the appropriatable water in this state . . ., it might be said that nearly every abandoned water right could have its non-use justified by the economics that might prevail sometime in the future for use of this water. . . . This gleam-in-the-eye philosophy is not consistent with the protection and preservation of existing water rights." [Citations omitted] <u>CF & I Steel Corporation</u>, 515 P.2d at 458.

79 Ranch's predecessor in interest, Ralph Schaff, stated that

he was a dry land farmer and didn't know how to irrigate. Neither Bert Schaff, Pitsch's predecessor in interest, nor Eugene Schaff, the owner of 79 Ranch, knew he had a claim to an 1893 water right when he filed a notice for appropriation in 1973. The Pitsch land may have been irrigated in the 1920's, but no clear evidence was presented showing how much and when.

The District Court's findings of abandonment are therefore affirmed. This determination applies to the 1893 water right claimed by 79 Ranch, as well as the 1893 and 1920's water rights claimed by Pitsch.

It should be noted that in section 85-2-404, MCA, the legislature has provided that ten successive years of nonuse while water was available creates a prima facie presumption of abandonment. This presumption will be applied after all existing water rights have been adjudicated under part 2 of Title 85, MCA. In our holding, here, we are simply recognizing this general, modern trend, and providing an approach for the determination of abandonment of water rights consistent with the express intent of our legislature.

On May 30, 1973, Bert Schaff, Pitsch's predecessor in interest, filed a notice of appropriation of 30 c.f.s. of water. Schaff had purchased a new sprinkler system, but failed to receive certain necessary parts. Under section 89-811, R.C.M. 1947 (repealed 1973), a person is required to proceed with reasonable diligence to divert the water.

Pitsch claims that Bert Schaff proceeded with reasonable diligence by ordering the sprinkler system and that failure of delivery reasonably explains any delay. Also, Schaff's negotiations for sale of his land postponed development of an irrigation system.

"Reasonable diligence" is a question of fact to be determined on a case-by-case basis. Montana Department of Natural Resources & Conservation v. Intake Water Company (1976), 171 Mont. 416, 558 P.2d 1110. Here, the District Court found a lack of reasonable

diligence on the part of Bert Schaff. Such findings will not be disturbed by this Court unless there is a clear preponderance of the evidence against them. Smith v. Krutar (1969), 153 Mont. 325, 457 P.2d 459.

Here, there was a three-year and three-month delay between the filing of the notice and actual diversion. Pitsch argues the delay was excusable or reasonable, and therefore his claimed water right should relate back to Schaff's filing of the notice of appropriation. The test is whether there was an on-going effort to prosecute the construction of an irrigation system. See Intake Water Co., supra. While the record shows that Schaff purchased a sprinkler system, it does not show an on-going effort to proceed to completion and diversion. The original sprinkler system purchased by Schaff was neither installed nor used to divert water. Pitsch purchased and installed a whole new system. The record therefore supports the District Court's conclusion that Schaff failed to diligently prosecute the construction of the sprinkler system.

Pitsch claims there is no substantial evidence to support the District Court's determination that all 50 inches awarded to Vandervoort has a priority date of 1924. Pitsch argues that the evidence shows only 30 inches with a priority date in the 1920's, and the remaining 20 inches with a priority date of 1941.

In Vidal v. Kensler (1935), 100 Mont. 592, 51 P.2d 235, this Court stated that the fixing of an arbitrary date of appropriation is harmless error unless the objecting claimant can show that his water right antedates the date fixed for another. Here, Pitsch has not shown a water right prior to either 1924 or 1941 and therefore the error, if any, in setting the 1924 priority date is harmless. It should be noted that this rule in Vidal applies only when the priority date and not the amount of water is challenged.

Pitsch points out that the only evidence on record shows that 79 Ranch has used 30 inches of water and not 45 inches as

determined by the District Court. While 79 Ranch filed a notice of appropriation for more than 45 inches, a water right is determined by the extent of the use. Irion v. Hyde (1938), 107 Mont. 84, 81 P.2d 353. Since the only evidence on the record shows that 79 Ranch has used 30 inches of water and not 45 inches, the District Court's judgment must be modified accordingly.

In summary, the District Court's judgment is affirmed with respect to Vandervoort's water rights. The judgment should be modified to reduce 79 Ranch's water right from 45 inches to 30 inches.

We cannot affirm the amount of Pitsch's water right and the priority date set for that right. The District Court, after finding a lack of reasonable diligence and therefore no relation back to 1973, apparently granted Pitsch a "use" right as of 1976. The Water Use Act of 1973 emphatically stated that it contained the exclusive procedures for acquisition of a water right after 1973. Section 89-880(1) R.C.M., 1947 (now section 85-2-301, MCA.) Nothing on the record suggests Pitsch complied with the procedures of the Water Use Act. We therefore acknowledge only that the water rights of Vandervoort and 79 Ranch precede any water right claimed by Pitsch.

Remanded for modification of the District Court's judgment in accordance with the views expressed in this opinion.

_____
Justice

We concur:

_____

_____

_Daniel J. Shea_
_____

_John C. Sheehy_
Justices
_____

The Honorable Chan Ettien, District
Judge, sitting in place of Mr. Chief
Justice Frank I. Haswell.

Mr. Justice Fred J. Weber respectfully dissents as follows:

While I concur in the result reached by the majority opinion, I respectfully dissent from a portion of the legal conclusions upon which it is based.

The majority refers to decisions of this Court which established the rule that mere non-use of water does not constitute abandonment, and that proof of intent to abandon the water right is a necessary element in proving abandonment. That rule has been stated and restated a number of times in the cases cited in the majority opinion. In Shammel v. Vogl (1964), 144 Mont. 354, 396 P.2d 103, Chief Justice Harrison pointed out that the testimony presented by the defendants in substance showed that the ditch in question was not carrying water from 1914 to 1956. He pointed out there was other evidence presented of water in the ditch. In affirming the holding of the District Court that the ditch had not been abandoned, the Court stated:

> "The loss of a water right or a ditch right by abandonment is a serious occurrence in Montana and other semi-arid western states. The early case of Thomas v. Ball, 66 Mont. 161, 213 P.597, stated in this connection: 'The authorities are all of one accord in holding that <u>the party claiming abandonment has the burden of proving his contention by a preponderance of the evidence, and that to establish abandonment the evidence to that effect should be clear and definite.</u>' 66 Mont. 161, at 168, 213 P.597, at 600. We find no error in the court's finding that the Weidman ditch right had not been abandoned. <u>Mere nonuser is not sufficient to establish abandonment,</u> and the testimony presented by the defendants relates exclusively to establishing periods of nonuser. <u>No evidence of intent to abandon is presented.</u>" (Emphasis supplied.) 144 Mont. at 362, 396 P.2d at 107.

<u>Shammel</u> follows many preceding cases and, in particular, the leading cases of St. Onge V. Blakely (1926) 76 Mont. 1, 245 P. 532, and Thomas v. Ball (1923) 66 Mont. 161, 213 P. 597. <u>Shammel</u> has not been modified or overruled by this Court.

]]

As pointed out in the majority opinion, in Holmstrom Land Co. v. Meagher County Newlan Creek (1979) ____Mont.____, 605 P.2d 1060, 1069, 36 St.Rep. 1403, 1413, this Court stated:

> ". . . Seventy five years of non-use is sufficient to provide 'clear evidence' of abandonment."

Taking the evidence in a light most favorable to Thorson, we concluded that all but 80 miner's inches were lost through abandonment.

The majority opinion here takes a significant step in holding that not only is a long period of non-use strong evidence of intent to abandon, but that continuous non-use raises the rebuttable presumption of an intention to abandon and shifts the burden of proof to the non-user to explain the reasons for non-use. As authority for that conclusion the majority then refers to Colorado decisions.

Unfortunately, the majority in this case as well as the majority in Holmstrom did not analyze Shammel and the numerous earlier cases. Prior to Holmstrom the clear rule under the decisions of this Court was that a party claiming abandonment had the burden of proving his contention by a preponderance of the evidence. Mere non-user was not sufficient to establish abandonment. While Holmstrom may be explained as merely restating a previous rule that non-use is evidence of abandonment, though not conclusive, the present majority opinion proceeds well beyond that point. As stated by the majority, a long period of continuous non-use raises the rebuttable presumption of an intention to abandon and shifts the burden of proof to the non-user. While the majority expressly did not overrule Shammel that is the effect of the opinion. Long established rights to the use of water deserve more accurate analysis and treatment. As

]2

stated in Shammel, the loss of a water right by abandonment is a serious occurrence in Montana.

I am particularly concerned as to the effect of the majority opinion on the adjudication of water rights under Chapter 2 of Title 85, MCA. Neither the majority here nor the Holmstrom opinion demonstrates a reason for such a significant change in the long-standing rule on abandonment of water rights.

Justice

13

The Honorable J. Chan Ettien, District Judge, dissenting.

I dissent.

At a time when the fixing of Montana water rights is in a transitional stage, the Court is overturning a rule which has been an integral part of Montana water law for almost 100 years. Tucker v. Jones (1888), 8 Mont. 225, 230, 19 P. 571.

That rule is: "non-use standing alone is not sufficient to establish abandonment of a water right."

Mere lapse of time during which there is no use does not constitute abandonment without proof of a clear intention to abandon. Musselshell Valley Farming & Livestock Co. v. Cooley (1929), 86 Mont. 276, 283 P. 213; Moore v. Sherman (1916), 52 Mont. 542, 159 P. 966; Featherman v. Hennessy (1911), 42 Mont. 535, 113 P. 751; Tucker v. Jones, 8 Mont. at 225. Abandonment must include proof of intent to abandon. Tucker v. Jones, supra; McCauley v. McKeig (1889), 8 Mont. 389, 21 P. 22. There must be concurrence in relinquishment of possession and intent to abandon. Thomas v. Ball (1923), 66 Mont. 161, 213 P. 597. See also, Irion v. Hyde (1938), 107 Mont. 84, 81 P.2d 353. The requirement of intent to abandon is a cardinal principle of Montana water law, which has been upheld by the courts and relied upon by Montana's farmers and ranchers for over a century.

The 1973 Water Act provides for adjudication of all water rights claimed before July 1, 1973, to be determined under the statutory and case law applying to appropriation and use of water rights before that date.

MCA 85-2-404 relating to abandonment under the 1973 act stated that: MCA-85-2-404 ". . . does not apply to rights until they have been determined in accordance with . . ." the water law in existence prior to July 1, 1973.

On July 1, 1973, the rule was that nonuser alone was not sufficient to establish abandonment of a water right. To me, it is clear the legislature wanted the status quo on pre-July 1, 1973, water law to be maintained until water rights were

established under the 1973 Act. Overturning a 100 year rule is not maintaining the status quo.

Beginning with the effective date of the 1973 Water Act, this writer, in his practice of law, and I am sure other attorneys in theirs, began to be consulted by farm and ranch people on their water rights. It was not unusual that an old appropriation and irrigation system was present, but had not been in use for many years, twenty, thirty, forty, fifty years or more. It was my advice, and I'm sure the advice of my professional colleagues, to file a claim of right based on such appropriation. Such advice was grounded on the rule that nonuse standing alone could not constitute the abandonment of a water right. Claims were made and filed with the water courts on the strength of the ancient law.

Back in the 1960's, the State Water Conservation Board made a water resource survey of the state. The survey covered the history of land and water use in irrigated areas, maps showing irrigated areas, and water right data of appropriation and decrees for each county. It is common for the maps to show ancient irrigation works "not in use," but which had had water applied by those works to irrigation.

It is my understanding that such ancient irrigation works were mapped because of the longstanding rule against abandonment being determined solely by nonuse. Many old nonuse systems were worked into claims filed with the water court as existing rights.

In 1980, this Court was faced with Holmstrom LD. Co. v. Meagher County, et al. (1980), ____ Mont. ____, 605 P.2d 1060, 36 St.Rep. 1903. The particular right in question involved an earlier conveyance of 337 inches of water separate and apart from land. The grantees had twenty acres of land subject to irrigation and eighty inches of the 337 inch conveyance applied. The 257 inch balance was never used. This Court found, under the circumstances, that the unusued 257 inches had been abandoned by nonuse, saying: "Seventy-five years of non-use is sufficient to

provide 'clear evidence' of abandonment."

It is well at this stage to again point out that a water right is subject to transfer separate and detached from land, as well as being transferred with the land. Yellowstone Valley Co. v. Associated Mortgage Investors (1930), 88 Mont. 73, 290 P. 255; St. Onge v. Blakely (1926), 76 Mont. 1, 245 P. 532.

The former is the circumstance of Holmstrom.

A water right, the use of which has been applied to land, becomes appurtenant to that land. Tucker v. Jones, supra.

Nonuser of an unattached right cannot become vested because it has not been applied beneficially within a reasonable time of its acquisiton. For example, a water company has an unattached right which must be applied beneficially within a reasonable time, whether it be for irrigation, domestic, commercial or industrial use, or it may be lost. ~~Baily~~ *BAILEY* v. Tintinger (1911), 45 Mont. 154, 177-178, 122 P. 575.

In our case, both types of transfer are present. The 79 Ranch claim was by reason of Yellowstone LD. Co.'s conveyance of Section 25 with an appurtenant 83.33 inches of the Mont. Cattle Co. right.

Pitsch claims 166.66 inches, unattached, dated June 1, 1912, of the Mont. Cattle appropriation by reason of Yellowstone LD.'s conveyance of Section 35 and 166.66 inches of the Mont. Cattle appropriation to Claude Hill. Evidence indicated about 74.3 acres was irrigated in the 1920's in the northern part of Section 35. Thus, we have a situation where about 92.3 inches of the Yellowstone LD. transfer was never used for a period of over seventy-five years.

Holmstrom fails to consider its effect on mining rights.

Locators of lode claims often located a millsite in conjunction with their claims, and appropriated water for the operation of their mill. The vagaries of mineral prices have often left these properties inoperable, though ownership was maintained. There are patented and other lode claims which, with their

millsites, have not operated for periods up to fifty, sixty, or seventy years, but have potential given the right economic conditions.

Placer operations appropriated water to wash gold or gem bearing gravels. Many such ventures have been down for long years because economic conditions have not justified operation.

It is no argument to say seventy-five years or so of nonuse is abandonment, because it is obvious in such mining situations the owners intend to use the water right in mining operations at some time.

The majority cites Smith v. Hope Min. Co. (1896), 18 Mont. 432, 45 P. 632, in support of its position. The case is to the contrary.

The Hope and Algonquin companies were silver producers at Philipsburg, Montana, which had settled their water rights from Frost Creek. With the demonetization of silver, the Algonquin mill shut down but was kept under maintenance and security for nine years or more. It was argued that the Algonquin had abandoned its water right by the nine year nonuser.

The Court prefaced its remark quoted by the majority here by citing the accepted rule: ". . . mere nonuser of a water right is not an abandonment." Smith v. Hope Min. Co. 18 Mont. at 439, and followed the majority quote with these words:

> "It cannot be contended for a moment that there was a scintilla of evidence tending to prove that the Algonquin Company intended to abandon the mill. Every act shows that they did not so intend. They did not use the water, simply because the machinery of the mill was not in motion. When it thus appears that the intention was clearly not to abandon the principal estate (that is, the mill), we cannot hold that the fact of temporary and necessary nonuser of the appurtenance (that is, the water) was any evidence whatever of an intent to abandon that appurtenance. The appurtenance was a necessity to the mill, and the intention to abandon that appurtenance must clearly appear. (See cases last cited.) We think the contrary clearly appears in this case. If we sustain the finding of the district court as to the abandonment, it would be holding, in practical affairs, to this effect, viz., that if, through the vicissitudes of mining, a company finds itself

> obliged to close its mill for a considerable
> period, -- a period as long as the statute of
> limitations, -- then, in order to preserve the
> water right appurtenant to the mill, they will
> not be permitted to allow the water to remain
> idle, but must continue its use. To continue
> its use they must keep the machinery of the
> mill moving. These views lead into absur-
> dities. They simply demonstrate that, if a
> milling or mining company is obliged to close
> its mill, and thus cease the use of its water
> right for a period equal to the statute of
> limitations, it will by such an act be deemed
> to have abandoned the water right, which is an
> absolutely necessary appurtenance to the mill.
> We cannot subscribe to any such doctrine as
> this."

One wonders what the Anaconda's situation will be with its water right appurtenance to its smelter and concentrator at Anaconda if it carries out its announced intention to raze those properties to the ground.

It is safe to say that the present owners of the Hope and Algonquin properties are holding their lode claims and millsites, even though the mills are long gone, looking to the day of profitable operation, and still claim their appropriations to their millsites.

Nor, is there prejudice to junior users, because use of the water is rightfully theirs if the senior right is not being used. It is the history of Montana water that, if there is a use for it, it will be used. The water will be of benefit to someone.

Judge McKinnon, in finding abandonment of the Montana Cattle Co. 1983 right must have relied on Holmstrom. There is no other basis for such ruling.

To affirm effects destruction of the old rule. The old rule had the quality of being in black and white; there was no in-between. Everyone understood. This Court has now introduced confusion and chaos to the 1973 Act. In the next few years water judges are going to be considering water claims reflecting various periods of nonuser.

Under Holmstrom and the present case, where is the cut-off which says a given period constitutes abandonment?

We have four water judges. Is this Court going to give

direction to the problem of nonuser, or, will each water judge be free to establish his own cut-off rule?

The old rule should be kept because it is of even application to all, and everyone is familiar with it.

Holmstrom is easily distinguishable. It had a detached right and its purchaser was bound within a reasonable time to apply it to identifiable land. Bailey v. Tintinger, supra. He made no effort to apply more than eighty inches to his land. A failure to apply an unattached water right to use within a reasonable time after acquisition is sustainable evidence of intent to abandon. On the other hand, an extended nonuse of water to land to which it is appurtenant is not alone evidence of intent to abandon.

The present case has both situations.

Under the evidence in this case, I would find:

(1) Under the old rule, that there had not been abandonment of the one-sixth of the 1893 right appurtenant to Section 25-5-19 as claimed by 79 Ranch, and that it was entitled to one-sixth or 83.3 inches of the 1893 right;

(2) that 74.3 inches of the one-third 1893 right conveyed to Claud Hill thence to Pitsch was applied to the northern part of Section 35-5-19, and had not been abandoned;

(3) that 92.36 inches of the 1893 right conveyed to Hill along with Section 35 had not been used, and was abandoned; and

(4) that the Vandervoort right be affirmed, it being shown that Vandervoort's undisturbed possession and use was for a period of time in excess of the time necessary to acquire title by prescription, standing alone, and was sufficient to vest right to use of water as of 1924. Cook v. Hudson (1940), 110 Mont. 263, 281, 103 P.2d 137.

The Honorable J. Chan Ettien, District Judge, sitting in place of Mr. Chief Justice Frank I. Haswell.

Mr. Justice Frank B. Morrison, Jr. specially concurs as follows:

I concur in the result but would like to add these comments.

My dissenting opinion filed in 79 Ranch, Inc. v. Pitsch (1981), ____ Mont. ____, 631 P.2d 690, 38 St.Rep. 1048, accurately sets forth my views in this matter. However, upon remand to the District Court, findings of fact were made with respect to reasonable diligence and those findings bind me in reviewing this appeal.

There is evidence in the record which would support a finding of reasonable diligence by Pitsch's predecessor-in-interest but I am unable to say that the trial court abused its discretion in finding lack of diligence. Therefore, I must vote to affirm though, had I been the trial judge, reasonable diligence would have been found and the Pitsch right therefore would date from 1973 and would be exercised pursuant to filing.

Justice